## MARION COOPER *v.* THE STATE.

59  267
78  186

59   267
e90  110

1. JURORS. *Selection of names. Board of supervisors. Constitutional law.*
   The method of obtaining petit jurors for the Circuit Court, by means of a list of names selected by the board of supervisors, provided in Code 1880, §§ 1680, 1681 *et seq.*, is constitutional, and a special venire in a capital case may be drawn from the box so prepared.

2. SAME. *Impanelling. Conscientious scruples. Capital punishment.*
   A person who states upon his *voir dire* that he is opposed to capital punishment under all circumstances, is an incompetent juror in a murder case, and the accused cannot successfully object to his rejection by the court. *Spain* v. *State, ante,* 19.

3. WITNESS. *Competency. Mental capacity. Defective memory.*
   An old man, whose memory is so impaired that he knows nothing but what he reads from a memorandum, is a competent State's witness in a capital case, if, after referring to the paper, he can recollect as having occurred the facts to which he testifies.

4. SAME. *Refreshing recollection. Method of examination.*
   Such testimony is admissible if the memorandum, which the witness made at the time of the offence to aid his memory, is not introduced in evidence, but held in his hand and referred to by him when interrogated, and thus each question answered as asked.

5. INDICTMENT. *Return by grand jury. Filing by the clerk.*
   If an indictment is marked " filed " by the clerk, with the date and his signature, this is evidence of its legal return into court by the grand jury, and a motion in arrest of judgment, upon the ground of no return, should be overruled where the record discloses these facts.

APPEAL from the Circuit Court of Pontotoc County.

Hon. J. W. C. WATSON, Judge.

R. W. Pannell, an old man, who lived in Pontotoc County, hired Jim Collier, and lodged him near his house. While Addison Isbell was working in his field, on June 15, 1880, the appellant came to borrow a plow, and told him that he had found a snake's head wrapped in a piece of cloth, which looked like Jim Collier's coat-lining, lying in his field, and that he believed Collier put it there to trick him, and somebody would go dead about it; and that, if Collier did not quit troubling him, he would get him. He informed Cato Williams also of this conjuration by Jim Collier. About noon next day, while Pannell was sitting in his gallery, the appellant came from his house a half mile away, and said that Collier had been troubling him, and he would stand it no longer. At this time Collier came to the well near by, to get his water-keg, when the appellant arose, advanced on him, and demanded a stick which he had in his hand. Collier did not surrender the stick; and the appellant raised an axe over his head. At Pannell's order he put down the axe, but immediately seized Collier, and, in the struggle which ensued, drew a concealed knife and stabbed him. Dr. J. A. Bell was called, and attended the wounded man, but he died. No one saw the stabbing but R. W. Pannell, who was eighty years old, and whose memory was so defective that he knew he would forget the particulars of the tragedy, and therefore wrote them down immediately and kept the memorandum. About two o'clock on the same afternoon the appellant saw Isbell again, and said he went for Jim, and got him; that he had cut him near his old heart. He then fled, but stopped at the house of Pannell's son, Wiley E. Pannell, to tell him that his father would get the money which he owed him, but that he had to leave because he had killed Jim Collier; that he found the snake's head in the field, and believed that the rag in which it was wrapped was Collier's coat lining, and that Collier put it there.

At the August Term of the Circuit Court a grand jury was duly impanelled, with W. E. Donaldson as foreman. The record contains an indictment in due form, indorsed as follows: —

"THE STATE OF MISSISSIPPI.          "*Witnesses:*

"1642.          *v.*          Murder.          "R. W. Pannell, Addison Isbell, Cato Williams, Dr.
          MARION COOPER.          J. A. Bell, Wiley E. Pannell.

"A True Bill.

          "W. E. DONALDSON,          "No Prosecutor.

                    "*Foreman of the Grand Jury.*

"Filed August 5, 1880.

                              "JOHN H. CRAWFORD, *Clerk.*"

The appellant was arraigned under this indictment, and pleaded "not guilty." At the February Term, 1881, a special venire of fifty was ordered to be drawn from a box containing three hundred and fifty names selected and furnished by the board of supervisors of the county for the use of the court, when the appellant, by his counsel, objected to the venire being drawn from this box, and claimed the constitutional right to be tried by a jury drawn from the body of the county; but the court overruled his objection. In impanelling the jury, several persons were rejected over the appellant's objection, because each of them stated on his *voir dire* that he was opposed to capital punishment under any circumstances. At the trial R. W. Pannell was introduced as a witness by the State, and testified over the appellant's objection, as set forth in the opinion. After the other witnesses had testified, the jury rendered a verdict of "guilty," fixing the punishment at imprisonment in the penitentiary for life. The appellant moved for a new trial upon the grounds of the erroneous selection of the names on the special venire, the rejection of the jurors who had scruples against capital punishment, and the admission of the testimony of R. W. Pannell, and also moved in arrest of judgment on the ground that the indictment had not been legally returned into court by the grand jury. Both motions were overruled, and he was sentenced.

*Thomas E. Bugg*, for the appellant.

1. An accused person is entitled to "an impartial jury" for his trial; and confining him to a part of the qualified jurors of the county, selected by the board of supervisors, abridges his right.

He must be allowed his chance with all the qualified persons in the county. The statute (Code 1880, § 1681), which reposes in the board of supervisors the extraordinary power of selecting jurors, is in conflict with § 7, art. 1, of the State Constitution. The jury-box system was designed to secure impartiality, and it should not be abrogated.

2. Prejudice to the State cannot result from permitting persons who do not favor the infliction of the death penalty to be jurors in cases of this character, under the existing statute. The case of *Williams* v. *State*, 32 Miss. 389, was reversed, under the law which made death the uniform penalty for murder, upon the rejection of a juror, who, although opposed to such punishment, stated that he could do justice between the State and the prisoner. · In the case at bar, the court should have carried the examination further before rejecting the jurors.

3. The deposition of a witness cannot be read in a criminal prosecution. *Dominges* v. *State*, 7 S. & M. 475. Any one may be examined as a witness who has understanding and memory. 3 Starkie Evid. 1728. While the deficiency of understanding exists, be the cause of what nature soever, the person is not admissible to be sworn as a witness. 1 Greenl. Evid. § 365. All persons who are examined as witnesses must be fully possessed of their understanding; that is, such an understanding as enables them to retain in memory the events of which they have been witnesses. *Hartford* v. *Palmer*, 16 John. 143; *Robertson* v. *Lynch*, 18 John. 451; *Feeter* v. *Heath*, 11 Wend. 477; *Juniata Bank* v. *Brown*, 5 Serg. & R. 226; *Smith* v. *Lane*, 12 Serg. & R. 80. This is a clear case of senile *dementia*, and the witness was not competent to testify at all, and swear away the life of a human being. If he reads from a memorandum prepared by him, or supposed to be prepared by him, ten months previously, his memory must be relied on to establish the fact that he made the memorandum on the day of the difficulty, and that it was in his possession from that time to the delivery of his testimony. If his memory is treacherous about the fight itself, it would be equally so with reference to these other vital facts. If R. W. Pannell was incompetent as a witness, the case must

be reversed, because we cannot tell what weight the jury may have given to his testimony.  *Livingston* v. *Kiersted*, 10 John. 362.

4. The motion in arrest of judgment should have been sustained.  There is nothing on the record to show how, or by whom, this indictment was ever returned into court, or, if returned by the foreman of the grand jury, whether it was done in the presence of at least twelve of such jury.  A defendant certainly has the right to know by what authority he is being prosecuted, by whom the indictment was found, and how and when it got into court.  In *Ex parte Phillips*, 57 Miss. 357, this court declared the Act of 1878 (Acts 1878, pp. 199–201) constitutional ; but even in this act it is made incumbent on the court below, when defects and omissions are pointed out, to correct and amend the same on the record, so that the record may be completed and made to conform to the facts.  In the case at bar, defects and omissions were pointed out in the court below, and nothing was done to supply them.

*T. C. Catchings*, Attorney General, for the State.

1. Pannell was not incompetent as a witness by reason of defect of understanding.  It is true that his memory was so impaired by reason of his great age that he could not testify without previously refreshing his memory by referring to memoranda made by him at the time the killing occurred, but that fact does not disqualify him.  The rule upon the subject is that a witness may inspect notes or memoranda to refresh his recollection ; and then if he can with a safe conscience swear to the facts, independent of the notes or memoranda, he is competent to testify ; but he will not be permitted to read his notes or memoranda to the jury, nor can they be admitted as evidence to the court or jury in any sense.  1 Phil. Evid. 586, note.  The foregoing rule was in no manner infringed. The witness knew enough to be conscious that his memory was defective, and therefore, at the very time of the killing, made a statement of the circumstances.  It nowhere appears that he read this paper to the jury ; nor did he examine it and repeat *verbatim* its contents.  He merely referred to the paper as the questions were asked him, and this reference so awakened his memory as to enable him then to recollect them,

and to testify from recollection. He does not stand in the attitude of a witness wholly without memory. His memory was so sluggish and defective that it needed to be refreshed by a reference to his notes, but when so awakened it was sufficient to enable him to give an exceedingly lucid and intelligent account of the killing.

2. The persons opposed to capital punishment were incompetent as jurors. *Jones* v. *State*, 57 Miss. 684 ; *Smith* v. *State*, 58 Miss. 867. Code 1880, § 1681, is constitutional. Return of the indictment by the grand jury is shown by this record.

CAMPBELL, J., delivered the opinion of the court.

The first assignment of error is without merit. The Constitution, art. 1, § 7, entitles the accused to a trial by an impartial jury of the county, but it is left to the legislature to prescribe the qualifications of jurors, subject to the prohibition of a property qualification, and to regulate the mode of obtaining a jury of the county ; and the mode provided by the Code of 1880 is free from constitutional objection.

The action of the court in excluding as incompetent jurors those who declared themselves opposed to capital punishment was correct. *Spain* v. *State*, *ante*, 19.

The testimony of R. W. Pannell was properly admitted. Although he was very old, and his memory was much impaired, he was enabled by means of a written account of the occurrence, about which he testified, made by himself about the time of the occurrence, and kept by him, to give an intelligent account of it. It does not appear from the bill of exceptions that the writing from which the witness testified was read in evidence, but the witness held it in his hand, and, when interrogated, referred to it, and answered by its aid, as each question was asked. He testified that " he knew nothing only as he read it from a paper he held in his hand, on which the particulars were written down by him on the day on which the difficulty occurred, immediately after the difficulty, when the transaction was fresh in his mind ; and he knew that he wrote it down correctly, and as it occurred ; that the paper had been in his possession ever since, and that he had taken the precaution to write them down because his memory was so short that

he knew he would forget them unless he wrote them down."
On cross-examination the witness said that, after referring to his
written account of the difficulty, he could then recollect it;
" that what was written on the paper was true as he had testified
·to it ; that he could remember it by referring to the paper ; and
now, that his attention was called to it, he could remember
much of it as having occurred."   These facts brought the tes-
timony within the rule sanctioned by the authorities.   Rey-
nolds's Stephen on Evid. art. 136 ; 1 Greenl. Evid. § 437, and
authorities cited in notes ; *Dugan* v. *Mahoney*, 11 Allen, 572 ;
*Guy* v. *Mead*, 22 N. Y. 462 ; *Insurance Co.* v. *Weide*, 9 Wall.
677 ; *Insurance Companies* v. *Weides*, 14 Wall. 375.   The
witness was competent.

The motion in arrest of judgment was properly overruled.
The indictment was marked " Filed" by the clerk, and this
was dated and signed by him.   This is " evidence of the proper
and legal return into court of such indictment."   Acts 1878,
p. 199.   The evidence sustains the verdict, and the new trial
was rightly refused, and the judgment is

*Affirmed.*