## MATTHEW RILEY *v.* THE STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Witnesses. Right of jury to disbelieve. Instructions.*
   An instruction authorizing the jury to disregard the testimony of any witness if, for any reason, they believe it untrue, is too broad, in that it sanctions action upon their secret knowledge.

FROM the circuit court of Marshall county.

HON. Z. M. STEPHENS, Judge.

The facts are sufficiently stated in the opinion.

*Smith & Totten,* for appellant.

The first instruction given for the state is certainly erroneous in telling the jury that they may, "if they [you] think it proper to do so, disregard the testimony of any witness, if, for any reason, they believe such testimony is untrue," thereby telling the jury that they could make use of their personal knowledge of facts affecting the credibility of a witness not in evidence, and that they may capriciously do this, if, for "any reason," they believe such testimony is untrue. Certainly this is not the law.

In the case of *Lavenburg* v. *Harper*, 27 Miss., 299, the court, in passing upon a similar charge and pronouncing it erroneous, says: "It did not confine them to the testimony adduced on the trial, nor to the manner nor demeanor of the witnesses while testifying, nor to any circumstances apparent upon the examination and legitimate subjects for their consideration, but permitted them to indulge any undue suspicions, and even to act upon their own private information and to condemn a witness unheard and undefended." Surely the state cannot ask for conviction upon facts not proven in the trial. *Nail* v. *State*, 70 Miss., 32. Would it not be mockery to try a man by the evidence on the trial, and then, after all the evidence has been

submitted, for the court to tell the jury, as we contend was done in this charge, that, when they retired to consider of their verdict, they might, if they thought proper to do so, disregard the testimony of any witness, if, for any reason, whether from private knowledge of, or their dislike for the witness, because he was the defendant or otherwise, believe such testimony untrue? In this enlightened age such is not the law. *Layton* v. *State*, 56 Miss., 791; *Graff* v. *People*, 134 Ill., 380. Jurors cannot take into consideration anything not in evidence before them. *State* v. *Jones*, 7 S. E. Rep., 296.

*Calhoon & Green*, on the same side.

The case must be reversed because of error in giving the first instruction asked for by the state. Of course, the instruction was aimed directly at the defendant, because, as a matter of fact, he was the only witness to the killing. The instruction was plainly telling the jury that they might arbitrarily disregard all the testimony of the defendant in the cause. It will not do to tell a jury that they may disregard the testimony of any witness if, "for any reason," they believe such testimony untrue. Such a reason must arise out of the evidence, and the instruction should so tell them, but this charge falls under the condemnation of *Glenn* v. *State*, 64 Miss., 724; *Woods* v. *State*, 67 Miss., 575, as we earnestly insist, and it also falls under the implied condemnation of *Godwin* v. *State*, 73 Miss., 873. Instructions on the weight of testimony, as this one is, are of a very delicate nature, and may be made the engines of great oppression, particularly in a case like the one at bar. It is not proper to tell a jury, when the defendant himself is practically the only witness in his own defense, that they may disregard the whole testimony of any witness, if for any reason, whether inside or outside the record, they believe it untrue, or because he has made contradictory statements without even, in such case, saying that those contradictory statements must be " intentionally false." *Owens* v. *State*, 63 Miss., 450.

*Wiley N. Nash,* attorney-general, for appellee.

There is no specific objection made in the assignment of errors to any particular charge, and the court ought not to treat the assignment as sufficiently made to require consideration. The fourth assignment is a most general objection. We do not believe the court will, however, find any error in the charges asked and given for the state in this case.

WOODS, C. J., delivered the opinion of the court.

While the youth, Walter Stewart, testifies that he heard the word "lie," spoken by the defendant to the deceased, and the words "damned lie," spoken by the deceased to the defendant, and that quickly thereafter he heard a blow, and, on looking, saw the deceased fall from his horse, yet it is apparent that he did not see the parties to the tragical occurrence at the moment when the blow which caused death was struck, and did not at that time see what the attitude and actions of defendant and deceased were. The only eyewitness, now alive, to the entire transaction was the defendant himself. His evidence, delivered on the trial, strongly tended to make out a case of self-defense. The truth of the defendant's narrative of the killing and its attendant circumstances and his credibility were attacked by the state, by laying before the court and jury the evidence of several witnesses as to other and contradictory statements on material points made under oath by defendant upon the preliminary examination before the justice of the peace. The attack was not wholly successful, and not at all satisfactory as to the supposed conflict in the defendant's evidence on the trial then pending and his evidence on the preliminary examination as to the important inquiry touching the direction in which the muzzle of the deceased's gun was pointed when the fatal blow was struck. The defendant swore that when he struck the deceased with the hoe that the deceased jerked up his gun and raised it so that the muzzle was pointing towards defendant. The evidence of the impeaching witnesses, taken as a whole and

fairly considered, does not impeach, for, as we understand the
evidence of the impeaching witnesses, it remains true that on
the preliminary hearing, as on the trial below, the defendant
stated that, when he struck, the muzzle of deceased's gun was
pointed towards him. It is manifest that, if the defendant's
evidence of the manner in which the homicide occurred was
given full credence by the jury, no conviction could be reason-
ably expected, and his credibility was not to be destroyed by
the fact only that he was the defendant. It seemed necessary,
therefore, to make the attempt to impeach, which we have
already adverted to, and that attempt failed, substantially.

Now, in this condition of the case, on the facts connected
with the killing, as disclosed by the evidence of the defendant,
the court gave the charge, No. 1, for the state in the following
words, viz.: "The court charges the jury, for the state, that
you are the sole judges of the weight of the testimony and the
credibility of the witnesses, and you may, if you think proper
to do so, disregard the testimony of any witness, if, for any
reason, you believe such testimony is untrue."

The charge was too broad. By it the jury was authorized
to disregard the testimony of any witness, if, for any reason,
the jury believed it to be untrue. By the terms of the instruc-
tion the jury was authorized to disregard the testimony of any
witness, if, for any reason, even though undisclosed on the
trial and not connected with the evidence laid before them, and
not growing out of the manner of the witness on the stand or
his interest in the result of the trial, or because of successful
contradiction or impeachment, the jury believed the testimony
untrue. This is not the law, never has been, and, it is to be
hoped, never will be. If the instruction be taken at its face
value, and held to mean what its terms declare, then the jury
was warranted in discrediting and disregarding the evidence
of the defendant, if, for any reasons known to themselves
privately and personally, they believed his testimony to be
untrue. This would be to try a defendant, not on the sworn

evidence, but on the secret knowledge of some facts in possession of the jury which might induce the jury not to believe his testimony.

It may be thought that the instruction meant only that, for any reasons appearing in the evidence, or springing out of it or suggested by it. It is possible that is what was meant by the court below; but that is not what it says, and, in this particular case, it may have misled the jury. To say the least, the language was ambiguous and susceptible of an interpretation immensely hurtful to the defendant in this case. Nor is it cured by any other instruction given by the court.

For this error, the judgment must be reversed and the case remanded.

*Reversed and remanded.*