FLAVIUS BELL *v.* STATE OF MISSISSIPPI.

[43 South., 84.]

1. CRIMINAL LAW AND PROCEDURE. *Evidence. Memorandum at pre-liminary trial.*

Where the conservator of the peace, before whom a defendant charged with crime had a preliminary trial, made at the time a memorandum of the evidence taken on that trial which he knows to be correct, though not signed by him nor certified as a part of the record, the state may have him testify from the same touching the testimony then delivered by a defendant's witness in order to discredit her, although he have no independent recollection of what she swore before him.

2. WITNESSES. *Credibility. Falsus in uno. Trial. Instructions. Credibility of witnesses.*

An instruction that, if witness has sworn falsely to any material matter, the jury may disregard his testimony, is erroneous for failure to state that the false swearing must have been willful.

3. HOMICIDE. *Assault with intent to kill. Instructions.*

Where, on a trial for assault with intent to kill, the defense was that the shooting was accidental, and the facts were shown by eyewitnesses, an instruction that if accused deliberately raised a loaded gun and fired it at the prosecutor only a few feet away, and shot him, inflicting a wound, the law presumed that accused intended to kill the prosecutor unless the contrary appeared, was erroneous for failing to include the idea that the shooting must be believed to have been by design, and not accidental.

FROM the circuit court of, first district, Panola county.

HON. JAMES B. BOOTHE, Judge.

Bell, the appellant, a negro, was indicted and tried for assault and battery with intent to murder another negro, one Applewhite; was convicted and sentenced to the penitentiary for five years, and appealed to the supreme court.

The defendant, Bell, was in the house of a negro woman, Lula Ford, and was handling a shotgun when Applewhite

came to the house to get a bucket which he had shortly before left in the Ford kitchen. As he was entering the kitchen he was shot by defendant; the evidence sharply conflicting as to whether the shooting was intentional or accidental; according to the evidence offered by the state, the defendant was cautioned by Applewhite, about handling the gun carelessly, whereupon he threw his gun to his shoulder, and without provocation aimed and fired at Applewhite, only a few feet away; but according to the evidence offered by defendant, chiefly the testimony of the woman, Lula Ford, an eyewitness, the shooting was accidental. Defendant himself did not testify. To impeach the testimony of the woman the state in rebuttal introduced one Taylor, the justice of the peace before whom the preliminary trial of the defendant was had, and before whom the woman had testified. This witness, Taylor, testified that while he recollected that the woman, Lula Ford, testified as a witness at the preliminary trial he had no independent recollection of what she had testified. Over the objection of defendant the court below permitted the witness, the justice of the peace, to refer to a written memorandum of the evidence made by him at the preliminary trial, but not signed nor certified by him to the circuit court as part of the record, and to testify solely from such memorandum that Lula Ford testified in the committing court before him that defendant purposely shot Applewhite. Before so testifying, however, the witness admitted, in response to inquiries of defendant's counsel, that the memorandum did not refresh his memory as to what the woman stated on the preliminary trial, and that he did not know whether or not the memorandum contained all of her testimony on that trial. The first and second instructions for the state are as follows:

"(1) The court instructs the jury for the state that they are the sole and exclusive judges of the weight of the evidence and the credibility of witnesses, and in determining how much weight or credit they will give to the testimony of any witness,

if any at all, they may take into consideration the reasonableness or unreasonableness of such testimony; the fact, if such is shown by the evidence, that the witness has made contradictory statements about material matters in this case; that any witness has been convicted of any crime, if such is shown by the evidence; or if the jury believe from the evidence that any witness has sworn falsely to any material matter in this case the jury may disbelieve and disregard the whole testimony of such witness.

"(2) The court instructs the jury for the state that if they believe from the evidence beyond a reasonable doubt that the defendant deliberately raised a shotgun loaded with buckshot to his shoulder and fired it at Wm. Henry Applewhite, who was only a few feet away, and shot him in the cheek and tore away his nose with the contents of said gun, then the law presumes that defendant intended to kill appellant unless the contrary appear from the evidence in the case."

*A. W. Shands,* for appellant.

It was error to permit Taylor, the justice of the peace before whom the preliminary trial of appellant was held, to read in evidence, on the trial in the circuit court, any of the written memorandum of the testimony of the witness, Lula Ford, taken down by him on the preliminary trial. And it was error for the state to introduce as an exhibit to his testimony the written memorandum. Taylor testified that he had no remembrance of what the woman had stated in his court. The memorandum was not legally admissible as a record of evidence taken down in the justice's court, for there was no official certificate to it. It could not be used as an aid in refreshing the witness Taylor, for, although made by him at the time the woman made her statements as a witness before him, it did not refresh his memory. In answer to a question propounded to him by counsel for appellant before he had read the contents of the memorandum, he stated: "It does not refresh my recollection,

but it is my writing, and I would swear that it is what was said during that trial. So far as refreshing my memory, I can only rely on this paper, for I don't remember a word that was said." The testimony of this state's witness, Taylor, was very material, if competent, as it went to prove statements made by appellant's principal witness when under oath, in conflict with statements made by her subsequently in the circuit court under oath. Hence, as it is submitted that the testimony was incompetent, its admission constituted reversible error.

The first instruction granted to the state was clearly erroneous. The last clause reads, "and if the jury believe from the evidence that any witness has sworn falsely to any material matter in this case the jury may disbelieve and disregard the whole testimony of such witness." This court has passed upon instructions such as this so often that it would seem that district attorneys in drawing instructions as to false swearing would by this time never fail to insert the qualifications that the false swearing must have been wilfully, knowingly and corruptly done. For unless the instruction contains such qualifications it is erroneous. *White* v. *State,* 52 Miss., 227; *Davis* v. *State,* 89 Miss., 119, 42 South. Rep., 541; *Finley* v. *Hunt,* 56 Miss., 221.

There was also error in the second instruction granted to the state. The sole defense relied upon by appellant was, that the shooting was accidental. The instruction charged the jury that if the appellant deliberately raised his shotgun and shot Applewhite, then the legal presumption is that appellant intended to kill Applewhite, unless otherwise distinctly shown. This instruction was erroneous for the reason that it failed to embrace the existence of malice aforethought, or that the shooting was done with the deliberate design in appellant's mind to effect the death of Applewhite. It merely instructed the jury on the weight of the evidence. In the case of *Hibbler* v. *State,* 87 Miss., 362, s.c., 39 South., 846, in a terse and clear opinion delivered by Justice TRULY, the court set out the things which

a jury must believe in order to justify a conviction in a case of this kind. In the first place, the charge must be that the jury must believe from the evidence beyond reasonable doubt that the defendant fired the shot of his malice aforethought, a qualification not embraced in the instruction in the case at bar. The defense set up by Hibler, in the case cited, was that of self-defense. Justice TRULY stated that "the instruction must be that the jury must believe that the killing was not done in self-defense." The instruction must further charge the jury that the shooting was done with a deliberate design to effect the death of the person shot at, to justify a verdict against the defendant.

The second instruction for the state was erroneous for the further reason that it announced the proposition that in this particular case the shooting of Applewhite with a shotgun loaded with buckshot constituted proof of the intent of appellant to commit murder. This case is very much like that of *Raines* v. *State,* 81 Miss., 489, s.c., 33 South., 19, where this court said, "The only debatable point before the jury was, whether the gun was deliberately or accidentally fired by the defendant, and the court instruction is erroneous in making the use of the gun decisive of defendant's guilt merely because it was a deadly weapon. Whether the gun was accidentally or deliberately fired was a question which should have been left to the free determination of the jury, uncontrolled by the presumptions imposed upon them." See also *Hawthorne* v. *State,* 58 Miss., 778.

This second instruction for the state is further objectionable because inferentially it told the jury that an "intention to kill" was sufficient for the basing thereon of a verdict of guilty as charged in this case. This was of course a fatal defect. "One may intend to wound without intending to kill, and one may intend to kill, not as an act of murder but in necessary self-defense." *Thames* v. *State,* 82 Miss., 667, s.c., 35 South., 171.

*R. V. Fletcher,* assistant attorney-general, for appellee.

Appellant assigned for error that the state's witness, Taylor, was allowed to read to the jury from a paper what purported to be the evidence of the appellant's witness, Lula Ford, given on the preliminary trial. This paper was not certified to, nor was it offered in evidence. It was used by the witness, Taylor, to refresh his recollection. He stated on the witness stand that he wrote the paper at the very time Lula Ford was giving her evidence, in the justice's court, before him, and that it contained the substance of her testimony there, and that he knew that it was correct as written. It is contended by counsel for appellant that the testimony of Taylor was rendered incompetent because of the fact that the witness stated, after looking at the paper, that he still had no independent recollection of the contents of the paper.

Under the authorities the court did not err in receiving Taylor's testimony from the paper. See *Cooper v. State,* 59 Miss., 267, where an aged and infirm witness had very little recollection of the contents of a paper save that, as in the case at bar, the witness knew that the paper was correct. See also Greenleaf on Evidence, vol. 1, p. 437, and the authorities there cited. A careful examination of the authorities there presented shows that it makes no difference as to the inability of the witness to recall the facts independent of the paper, even after examination of the paper. The paper itself after complete identification was competent as original evidence. It would be just as competent as the stenographer's report of testimony when fully proven. The paper contained exact language of the witness taken down at the time it was uttered, and the witness, Taylor, was able to say with confidence that it was correct as written. *Railroad Company v. Echols,* 54 Miss., 264. See also 1 Wigmore on Evidence, sec. 1398, *et seq.*

As to the first instruction granted to the state, and of which appellant complains, it must be admitted that the charge would be more correct if the word "wilfully" had been incor-

porated. It is hoped however, that the omission of this or other synonymous word will not, in a plain case like this, constitute reversible error.

As regards the contention of appellant that the second instruction for the state, as granted, constituted error, we would call the court's attention to the use of the word "deliberately" in the instruction, and submit the question to the court. The use of this word does not negative the theory of the killing being accidental.

CALHOON, J., delivered the opinion of the court.

The witness Taylor had no independent recollection of what the witnesses testified to in his court. Even the paper he had, as justice of the peace, there written, did not refresh his memory, for he had none, further than that he had taken down the testimony of the witnesses as delivered, and he knew it was correct. Under this state of facts the court did not err in receiving his testimony from the paper. In this conclusion we are not fully sustained by *Cooper* v. *State,* 59 Miss., 267, because there, after referring to the paper, the witness could recollect, while here he could not. But we are fully sustained by *N. O. R. R. Co.* v. *Echols,* 54 Miss., 264, and by the elaborate treatise in 1 Wigmore, Ev., p. 829, *et seq.,* and, as to criminal cases, 2 Wigmore, Ev., sec. 1398, *et seq.*

It was error to give the state's first instruction. The doctrine, *"Falsus in uno, falsus in omnibus,"* always dangerous in trials, should never be stated so broadly as here appears. The fact that a witness has sworn falsely to a material fact is not enough, unless he did it wilfully, knowingly, or corruptly. *Railroad Co.* v. *McCoy,* 85 Miss., 392, 37 South., 766, and the other cases cited in the argument of counsel for appellant.

It was error to give the state's second charge. The sole defense here is that the shooting was not by design, but accidental, and the facts were shown by eyewitnesses, so that *Raines* v. *State,* 81 Miss., 498, 499, 33 South., 19, 21, is pre-

cisely in point.   We approve what is there said, on similar conditions, that "the third instruction for the state, which is based upon the principle of law that one is presumed to intend what he does, and the fourth instruction, which declares that malice may be inferred from the use of a deadly weapon, are inapplicable to the facts in this case. . . . Here the only debatable point before the jury was whether the gun was deliberately or accidentally fired."   This is not a case for the entertainment of legal presumptions from the use of a deadly weapon.   The instruction should have included the idea that the shooting must be believed to have been by design—not accidental.   *Hibbler* v. *State,* 87 Miss., 362, 39 South., 896.

*Reversed and remanded.*