EUGENE WALDROP v. STATE OF MISSISSIPPI.

[54 South. 66.]

1. CRIMINAL LAW AND PROCEDURE.  *Multitudinous instructions.*

Where the trial court has given several instructions asked by the defendant, the court has the power to limit the number of instruc- tions within reasonable bounds, and it is proper to refuse other instructions which embody the same principles of law as in those that are given, with proper caution to avoid injustice.

2. INSTRUCTIONS.  *Credibility of witness.*  *Falsus in uno, falsus in omnibus.*

An instruction that the jury are the sole and only judge of the cred- ibility of witnesses, and that they may disbelieve any witness in the case provided they believe that such witness has not sworn truthfully, and that in determining whether they will believe or disbelieve any witness in the case they may take into consideration the interest of the witness, together with all the facts and circum- stances in the case. Where the defendant is not the only interested witness in the case, is not erroneous and does not give the jury the right to arbitrarily reject the testimony of any witness, and is not aimed at defendant; nor does it attempt to announce the *falsus in uno* doctrine.

3. HOMICIDE.  *Justification.*  *"Great bodily harm" instructions.*

An instruction that, "The court instructs the jury for the state that the great bodily harm sufficient to justify killing in this case, does not mean mere bruises inflicted by hands and "fists," is not erron- eous though the one inflicting them is larger and stronger than the other.

From the circuit court of Copiah county.

Hon. D. M. Miller, Judge.

Eugene Waldrop, the appellant, was indicted and tried for manslaughter, for the killing of one Lee Crawford, was convicted and sentenced to the penitentiary for a term of five years, and appeals to the supreme court. The opinion sufficiently states the facts in the case.

*R. N. Miller & H. B. Miller,* for appellant.

The court refused six charges asked by the defendant, every one of which was the law except the peremptory charge marked No. 6 and ought to have been given, on the authority of *Hill* v. *State,* 49 So. Rep. 145.

The court erred fatally in giving the first charge it gave for the state, which after telling the jury in the usual form that they were the judges of the credibility of the witnesses, told them, "You may disbelieve any witness in the case, provided you believe from the testimony that such witness has not sworn truthfully." This charge instructs the jury that they might arbitrarily disregard the testimony of any witness provided, "You believe from the testimony that such has not sworn truthfully." That is if they believe that a witness has not sworn truthfully as to one matter, they might disregard his evidence altogether. This instruction further goes on and tells them they may consider the interest of a witness in the case in making up their minds whether you believe him or disbelieve him. This instruction is pointed of course at the defendant, who was the only interested witness who testified, and is condemned, and it should never be given in a close case like this. See *Riley's case,* 75 Miss. 354; *Railroad Co.* v. *Tate,* 70 Miss. 349; *Mysack* v. *Wells,* 52 Miss. 149.

The first paragraph of the instruction is fatal error in being a misapplication of the maxim: *Falsus in uno, falsus in omnibus.* There is no qualifying words of "willful" or "knowing" or "corrupt swearing" and is con-

demned by the following cases: *Bell* v. *The State,* 90 Miss. 104; *Sardis Railway Co.* v. *McCoy,* 85 Miss. 391; *R. R. Co.* v. *Hedrick,* 62 Miss. 28; *White* v. *State,* 52 Miss. 216; *Findley* v. *Hunt,* 56 Miss. 221; *Gaines* v. *State,* 48 So. Rep. 182.

For these reasons this instruction was fatally erroneous and must reverse this case.

We come now to the fourth charge given for the state, which is in these words: "The court instructs the jury for the state that the 'great bodily harm' sufficient to justify killing, does not mean mere bruises inflicted by hands and fists."

This charge undertakes what the supreme court says in *Long's case,* 52 Mississippi, is impossible, that is to define what is, as a matter of law "Great bodily harm." It is never a question of law. It might be, if the facts were undisputed and nothing in them could be possibly construed as appearance of danger, but in this case surely it was not a question of law but one of fact. Bruises inflicted by hands and fists is judicially known to be great bodily harm as used by the statute.

That is, this court knows and has decided in *Hills case,* 49 So. R., *supra,* that blows with fist may be the "Great bodily harm" used by the statute in defining self defense. If blows are, surely bruises inflicted by the hands and fists may be. This fourth charge tells the jury that regardless of the character of the blows or bruises so inflicted, that this was not the "Great bodily harm" meant by the statute in defining self defense.

In *Longs case,* 52 Miss., this court said: "But what will or will not constitute such danger is a matter so difficult to define, depending upon things so varied, so minute, often unnoticed by spectators, that this kind of instruction is to be deprecated, and in cases of doubt should never be given."

This court has repeatedly held that it was not possible to define an overt act. That a mere glance of the

eye, an equivocal look might under circumstances be the overt act. *Holly's case*, 55 Miss. 424.

In this fourth charge, the court right in the teeth of *Hill* v. *State*, 49 So., *supra*, tells the jury, as matter of law, that bruises (which might even produce death) if inflicted with the hands and fists are not "great bodily harm," which justifies use of a deadly weapon. This never was the law; on the contrary the law is and was at common law that any felonious assault justified killing in self defense. What is a felonious assault depends upon the facts. I can defend my limb on the same terms I can defend my life. Mayhem is the destruction of any of my members, such as putting out my eye or breaking my nose or any of my limbs. This is a felony at common law and indictable as such. That a man may put out my eye with his hands needs no argument. A felonious assault is such an assault as indicates a present purpose to commit the felony of mayhem or any other felony, and of course it can be made with hands and fists.

Whether the "Great bodily harm" existed was peculiarly a question on all the facts for the jury and was not a question of law for the court. This fourth charge alone must condemn this case, and its giving demands a reversal and a new trial.

*Wells & Wells*, for appellant.

Under the state of facts as shown by the witnesses for the state itself instruction No. 4 was given for the state as follows, to-wit:

No. 4. "The court instructs the jury for the state, that great bodily harm sufficient to justify killing in this case does not mean mere bruises inflicted by hands and fists."

Now we submit that this was fatal error, this defining by the court what constituted serious or great bodily injuries. We say it was erroneous for two reasons.

First, if the court should have given any definition of serious injury whatever under the facts in this case then it should have declared as a matter of law not that such bruises as the state's evidence shows were inflicted upon Waldrop, did not constitute such serious injury as justified the use of a deadly weapon and the slaying of his antagonist by Waldrop, but, second, the court should have stated as a matter of law that under the evidence in this case Waldrop had a right to use his deadly weapon to defend himself under the above circumstances, even to the taking of the life of his antagonist who had him down, this hundred and ninety pound man raining blows on the hundred and thirty pound boy. While we most earnestly submit that the court should have instructed the jury that those blows, under the above circumstances, considering the disparagement in size and strength of the two parties, did, as a matter of law, constitute such serious danger as justified Waldrop in using his deadly weapon, this court may possibly disagree with us. But we cannot possibly see how the lower court could rightly instruct the jury that the blows which were inflicted, if mere blows of feet or fist did not constitute such serious danger as justified or would justify Waldrop in using his pocket knife to protect himself.

It is true that the court gave for the defendant instructions Nos. 1 and 2, but the most cursory examination of said instructions shows that they limit the right of the defendant to defend himself as against his stronger antagonist only as against the taking of his life, or the breaking of some limb. It excludes the right to defend himself from blows being rained upon him which might inflict bruises of the nature of a concussion of the brain which would be more fatal than breaking a leg or arm.

We respectfully submit that this was fatal, reversible error.

*James R. McDowell,* assistant attorney-general, for appellee.

Error is assigned because of the granting of the first instruction for the state, which tells the jury that they may disbelieve any witness in the case provided you believe from the testimony that such witness has not sworn truthfully. In the light of the *Bell case,* 90 Miss. 104, the words "Willfully, knowingly or corruptly" should have appeared, and their omission seems to call for reversal, if the court is to follow that decision.

The granting of the second and third instructions for the state are also assigned as error, but I submit that there is nothing in counsel's contention in this, as these instructions merely present the state's theory of the case and instruct the jury to convict if they believe the state's theory of the difficulty.

Argued orally by *R. N. Miller* and *W. C. Wells, Jr.,* for appellant.

MAYES, C. J., delivered the opinion of the court.

Eugene Waldrop was indicted in the circuit court of Copiah county for the killing of one Lee Crawford some time during the year 1910. The indictment was only for manslaughter, and the trials resulted in the conviction of Waldrop, who was given a five-year sentence in the penitentiary, and appeals.

A lengthy statement of the facts is unnecessary, since the questions raised chiefly arise out of alleged error in the instructions. It appears that Lee Crawford, deceased, gave a dance at his home one Saturday night, to which a large crowd came, including Eugene Waldrop, the appellant, and his brother, Charley. During the evening Charley Waldrop became involved in some altercation, or dispute, either at Crawford's gate, or in the road near the gate, and at the time Charley Waldrop was in the dispute it seems that Crawford was there, or went

there to quiet the disturbance. About the same time, appellant, having heard about the disturbance, left Crawford's house and went out to where the trouble seemed to be brewing, and after reaching there remarked that no two were "going to jump on Charley." At the time appellant made this remark, according to some of the testimony, it seems that he also used an oath, whereupon Lee Crawford, deceased, remonstrated with him, and appellant cursed Crawford for a son of a bitch. When appellant did this, Crawford struck him, and knocked him down, and commenced to beat him. While this was going on, appellant stabbed Crawford eight or nine times, killing him in a very short while. The testimony for the defense differs little from that of the state. Suffice it to say that the defendant's witnesses testified that Crawford first cursed Waldrop. However this may be, the jury heard all the testimony and were fully warranted in finding the verdict they did.

It further appears from the record that deceased was a much larger and stronger man than appellant; that deceased weighed about one hundred and eighty or one hundred and ninety pounds, and was a man of unusual strength, whereas appellant was weakly and weighed from one hundred and thirty-five to one hundred and fifty pounds. The reason for this statement will appear when we come to consider the instructions. It is not amiss to state here that the court granted sixteen instructions for the appellant, and an inspection of the instructions conclusively shows that the appellant received the benefit of every possible legal phase of the case. Crawford was slain at his own home, while trying to quell a disturbance occurring at a dance given by him in his home; and he was unarmed so far as this record discloses. He was killed while using his fists in resenting one of the grossest insults one can offer another. This was the state's testimony, and this was what the jury believed from that testimony. Under the facts of this

case, viewed in the light of the very full announcement
of the law given in the instructions for appellant, the
error which should reverse this case should be a sub-
stantial one, causing real and not imaginary prejudice
to the rights of appellant.

The first error assigned by counsel for appellant,
which we shall notice, is the refusal of the court to grant
six instructions asked for on the part of appellant. In
connection with this assignment of error, all instructions
given for appellant must be considered. One of the
instructions refused was a peremptory instruction to
find for defendant, and that this instruction should have
been refused is so apparent, we shall not discuss it at
all. The principle which controls us in the consideration
of the instructions in this case which were refused by the
court is to be found in the case of *Mabry* v. *State*, 71
Miss. 716, 14 South. 267, wherein this court has said:
"Where the court in any case has given the first six,
eight, or ten instructions asked by a party, and refused
any more, we will not consider errors assigned as to
such refused instructions, unless it shall appear that
the jury were not furnished a sufficient guide for their
proper determination of the case. The courts have just
as much right to limit instructions to a proper number
as they have to limit argument within proper bounds,
and it should be done, with proper caution to avoid injus-
tice, and they will be sustained in this course by this
court by its refusal to consider errors predicated of the
refusal of the trial courts to grant an unnecessary and
unreasonable number of instructions, whereby jurors are
confused often, and judges entrapped into error after
being wearied with attention to the many instructions
preceding, and much valuable time is wasted by counsel
and judges in disposing of the case."

We will first consider the instructions given for appel-
lant which in our judgment embody the same principles
sought to be announced in the refused instructions. Thus;

instructions Nos. 1, 2, and 16, given for appellant, embrace the same idea that is embodied in instructions Nos. 1, 2, and 3, refused. Instruction No. 1, given for appellant, tells the jury that if they believe from the evidence that the deceased was an able-bodied, strong, and powerful man, weighing one hundred and eighty pounds or more, and that he became involved in a difficulty with the defendant, who was not his equal physically, and if they further believe from the evidence that the deceased knocked the defendant upon the ground, and while upon him the defendant reasonably believed that his life or limb was in danger, then he had a right to stab and kill deceased, even though the jury may believe from the evidence that at the time defendant was not in either real or actual danger of life or limb at the hands of the deceased, and though the jury may further believe that deceased was absolutely unarmed. Instruction No. 2, given for the appellant, tells the jury that, in determining whether or not defendant acted in necessary self-defense, they have the right to consider the relative size and strength of the deceased and the defendant, and if they believe from the evidence, or have a reasonable doubt from the evidence or want of evidence, that defendant killed deceased in necessary self-defense, then they should acquit regardless of every other fact. By the sixteenth instruction, given for appellant, the jury are told that, in determining the guilt or innocence of the defendant, it is their sworn duty to take into consideration the relative size of deceased and defendant, and if they believe from the evidence, or have a reasonable doubt arising out of the evidence, or want of evidence, that deceased was a much larger or stronger man than defendant, and at the time the fatal blow was struck deceased had defendant on the ground and was on top of him, and the defendant then and there reasonably believed he was in danger of losing his life or suffering great bodily harm, it is the duty of the jury to acquit.

Thus, in three instructions given for the appellant the jury are told that, in arriving at their conclusion as to whether or not the appellant acted in self-defense, they may take into consideration the difference in size, weight, and strength of the combatants, and they are told that, taking this into consideration, if they believe from the evidence that the appellant had reasonable ground to fear great bodily harm on account of this difference in size and strength appellant had a right to stab and kill deceased, even though the jury believe from the evidence, as a matter of fact, that appellant was not in real or actual danger, and though they may further believe that, at the time appellant killed deceased, deceased was unarmed. These instructions state the law applicable to this feature of the case as broadly as it ought to be stated, and it is impossible for language to place before the jury the fact that they had a right to take into their consideration the difference in the size and strength of these two combatants in a more striking way than was done.

The refused instructions on this line are instructions Nos. one, two, and three. These refused instructions merely repeat in a little different phraseology the law given in the instructions above referred to, and should have been refused. Thus, instruction No. one, refused, tells the jury that if they believe from the evidence the deceased was a much larger and stronger man than defendant, so much so that the defendant was wholly and absolutely incapable of coping with him in physical combat, and was liable to receive serious and great bodily injury at the hands of deceased while engaged in such combat, then the defendant was justifiable in using a deadly weapon to defend himself from an unjustifiable and deadly attack from deceased, even though deceased was wholly unarmed and defendant was in no danger from deceased, except such as might be inflicted with his hands and feet. The second instruction, refused, tells

the jury if the evidence shows deceased was physically capable of inflicting great and serious harm with his feet or hands, and defendant had reason to believe and did believe, at the time he stabbed deceased, that he was in danger of such harm at his hands, and thereupon cut and killed deceased to protect himself from such harm, then it is immaterial whether deceased was armed or not at the time of the killing. The third refused instruction tells the jury if they believe from the evidence, or want of evidence, or have a reasonable doubt from the evidence, or want of evidence, that deceased was a larger and stronger man than the defendant, and that deceased weighed one hundred and seventy-five pounds or more, defendant being a smaller and weaker man, and weighing only one hundred and forty pounds or less, and that because of this the defendant was no physical match for deceased, and that the moment the fatal blow was struck by defendant he reasonably believed his life was in danger at the hands of deceased, or that he was about to suffer great bodily harm, the homicide was justifiable, even though the jury may believe deceased was unarmed.

We are not to be understood as indorsing these refused instructions; but we simply say that, if correct, they merely duplicate the principle already announced, and ought on that account to have been refused. It is readily seen that every principle contended for in the refused instructions was announced in the instructions given for appellant. The instructions are to be considered as a whole. *Reed* v. *Y. & M. V. R. Co.*, 94 Miss. 639, 47 South. 670; *Lewis* v. *State*, 93 Miss. 697, 47 South. 467.

The giving of instructions Nos. eleven and thirteen made the refusal of instructions Nos. four and five proper. The principles sought to be announced by refused instructions four and five are fully covered by instructions Nos. eleven and thirteen given for appellant. Thus, instruction No. eleven, given for appellant, tells

the jury that one has the same right to kill another, and is justified by the law in so doing, when it reasonably appears that the attacking party is about to disfigure such person's face by breaking his nose, or putting out his eye, or breaking his bones, just as much so as if the attacking person appeared to be about to kill such person. The instruction further tells the jury that a man is as much justified by the law in protecting any part of his body from serious harm as he is in protecting his life, and that if it appeared to defendant reasonably at the time that deceased was about to break his nose, or gouge out his eyes, then the defendant had a right to kill him, and the jury must acquit.

Instruction thirteen, given for appellant, tells the jury that if at the moment defendant stabbed deceased it reasonably appeared to him that deceased was about to choke him to death, and defendant so believed, then defendant had a right to kill deceased and the jury should acquit. Instructions four and five, refused, practically embody the same idea, and should have been refused.

It is next insisted that the court erred in giving instruction No. one for the state, which is as follows, viz.: "The court instructs the jury, for the state, that you are the sole and only judges of the credibility of witnesses in the case, and you may disbelieve any witness in the case, provided you believe from the testimony that such witness has not sworn truthfully. In determining whether you will believe or disbelieve any witness, you may take into consideration the interest, if any, the witness may have in the trial of the case, together with all the facts and circumstances in the case." Counsel for appellant contended that this instruction is fatally erroneous for two reasons, the first of which we shall now notice. Counsel contended that under this instruction the jury are given the right to arbitrarily reject the testimony of any witness. It is argued, further, that this instruction is fatally erroneous, because

it is aimed at the appellant, who is the only interested witness. As a matter of fact, appellant was not the only interested witness in the case. The whole trouble started over an altercation which his brother Charley had gotten into, and Charley Waldrop, among others, was a witness in the case. Counsel for appellant rely on the following authorities, which we shall take up and discuss. It is our judgment that the authorities relied on have no application to the case now before the court. *Riley* v. *State,* 75 Miss. 352, 22 South. 890; *Ry. Co.* v. *Tate,* 70 Miss. 348, 12 South. 333, and *Myrick* v. *Wells,* 52 Miss. 149, are relied on.

In the case of *Riley* v. *State,* 75 Miss. 352, 22 South. 890, the instruction condemned was quite different from the instruction in this case. In the Riley case the court told the jury that "you are the sole judges of the weight of the testimony and the credibility of the witnesses, and you may, if you think proper to do so, disregard the testimony of any witness, if for any reason you may believe such testimony untrue;" and the court said, "the charge was too broad. By it the jury was authorized to disregard the testimony of any witness, if for any reason the jury believed it to be untrue. By the terms of the instruction the jury was authorized to disregard the testimony of any witness, if for any reason, even though undisclosed on the trial and not connected with the evidence laid before them, and not growing out of the manner of the witness on the stand or his interest in the result of the trial, or because of successful contradiction or impeachment, the jury believed the testimony untrue. This is not the law, never has been, and, it is to be hoped, never will be. If the instruction be taken at its face value. and held to mean what its terms declare, then the jury was warranted in discrediting and disregarding the evidence of the defendant, if for any reasons, known to themselves privately and personally, they believed his testimony to be untrue. This would be to try a defend-

ant, not on the sworn evidence, but on the secret knowledge of some facts in possession of the jury which might induce the jury not to believe his testimony. It may be thought that the instruction meant only that for any reasons appearing in the evidence, or springing out of it, or suggested by it. It is possible that is what was meant by the court below; but that is not what it says, and in this particular case it may have misled the jury.''

The instruction here merely tells the jury that they may disbelieve any witness, provided they believe from the testimony, that such witness has not sworn truthfully. Surely this is good law. Surely this instruction announces only the sworn duty imposed by law on the jury. The *Riley case, supra,* impliedly indorses this very instruction. The case of *Railway* v. *Tate,* 70 Miss. 348, 12 South. 333, has no application. In that case the court merely held that where the testimony of the only witness for defendant is uncontradicted, and not improbable or unreasonable, it is error to give an instruction that, if any witness has knowingly testified falsely in a material matter, the jury may disbelieve the witness. No witness in this case was the sole and uncontradicted witness in the case, and the instruction in the above case was a different instruction from the one now under review. The case of *Myrick* v. *Wells,* 52 Miss. 149, is without any pertinency to any question involved in this case, so far as we can discover, and we therefore see no purpose to be accomplished by a discussion of it.

It is next insisted that the first instruction given for the state is also totally erroneous, because a misapplication of the *falsus in uno, falsus in omnibus* doctrine; that the instruction fails to put in the qualifying words that such witness ''willfully,'' or ''knowingly,'' or ''corruptly'' swore falsely; and the cases of *Bell* v. *State,* 90 Miss. 104, 43 South. 84; *Railway Co.* v. *McCoy,* 85 Miss. 391, 37 South. 706; *Railroad Co.* v. *Hedrick,* 62 Miss. 28; *White* v. *State,* 52 Miss. 216; *Finley* v. *Hunt,*

56 Miss. 221, and *Gaines* v. *State,* 48 South. 182, are
relied upon to sustain this contention. None of these
authorities have any application to this instruction. The
instruction does not attempt to announce the *falsus in
uno* doctrine. It is a totally different instruction. In
all of the above cases the instructions told the jury that,
if they believed from the evidence that any witness had
sworn falsely as to any material fact in the case, then
the jury had a right on this account to disregard the
whole of such witness' testimony. The court has con-
sistently held that where this rule was invoked the in-
struction must tell the jury that, in order to disregard
the whole of the witness' testimony for the false swear-
ing as to any material fact, the jury must believe that it
was willfully, or knowingly, or corruptly done. But the
first instruction given for the state is not that kind of
an instruction. It tells the jury that they are the sole
judges of the credibility of the witnesses, and that they
might disbelieve any witness, provided they believe from
the testimony that such witness has not sworn truthfully.
This is certainly the duty of the jury. While this in-
struction is not reversible error, yet, as said by Mr. Wig-
more, in his masterly work on Evidence: "The propriety,
from a judicial standpoint, of giving such an instruction,
is questionable."

The only other assignment of error which we care to
discuss is that which takes exception to the action of
the court in granting the fourth instruction for the state.
That instruction is as follows, viz.: "The court instructs
the jury, for the state, that the great bodily harm suffi-
cient to justify killing in this case does not mean mere
bruises inflicted by hands and fists." Counsel for ap-
pellant urge that the giving of this instruction is fatal
error and must cause a reversal, citing the case of *Hill*
v. *State,* 94 Miss. 391, 49 South. 145, as authority. This
instruction was not denounced by the *Hill case, supra,*
and as an abstract proposition of law is undeniable. The

state rested its prosecution on the faith of this being the law, and, if it is not, then let the man whose avoirdupois happens to be a little greater than that of his proposed antagonist beware of resenting any kind of indignity or insult, lest he be shot or stabbed to death by his weaker antagonist, who may go free under the law because of disparity in size, though the weaker one provoke the difficulty, and it is only the purpose of the stronger one to use his hands and fists in a moderate degree. No such law has yet been declared in this state. This instruction was given in the Hill case, but was not disapproved by this court, nor was the case reversed on that account. After giving the above instruction, the court refused instructions for defendant embodying the principles declared by instructions one, two, and sixteen in this case, and it was on that account that the Hill case was reversed. The Hill case was again before the court in 52 South. 630, but in neither instance did this court disapprove the instruction now under review. See, also, *George* v. *State,* 145 Ala. 41, 40 South. 961, 117 Am. St. Rep. 17.

The other questions raised by appellant we deem unnecessary to discuss, and the case is affirmed.

*Affirmed.*

ANDERSON, J. (dissenting).

I dissent from the majority opinion. In my judgment this is a typical case for the application of the principle that, a person being assaulted by another much larger and stronger than himself, and capable of inflicting great bodily injury with his hands and feet, or either such person so assaulted is justified in using a deadly weapon to protect himself, though the assaulting party is unarmed. Deceased knocked appellant down, and according to the latter's testimony, which is practically undisputed, was on top of him, choking him, beating him in the face, and gouging him in the eyes, when appellant stabbed him with his knife, which he got out while down,

until deceased got off of him, when it was soon discovered that his wounds were fatal. Deceased weighed from one hundred and eighty to one hundred and ninety pounds, and was very strong physically; while appellant weighed from one hundred and thirty to one hundred and forty-five pounds, and was physically weak. The killing took place about twelve o'clock at night, in or near the yard of decedent, in the dark, in the presence of several witnesses, who were unable, on account of the darkness, to see whether either of the combatants were armed. In this state of case, the fourth instruction for the state, by which the court told the jury "that the great bodily harm, sufficient to justify killing, does not mean mere bruises inflicted by the hands and fists," had no place. Conceding that in the abstract it correctly states the law, still it is not the law of this case. It had no application whatever to the facts here. This identical instruction was condemned as erroneous in *Hill* v. *State,* 94 Miss. 391, 49 South. 145. It is true the reversal was not put on that ground alone, for it was not necessary; but had there been no other errors, plainly, on the facts of that case, that alone should have caused the same result. And the error in giving this instruction for the state was not cured by those given for the appellant; for, taking them together, as applied to the particular facts of this case, and they are conflicting, and calculated to confuse and mislead the jury.

By the first instruction for the state the jury were told that they were the sole judges of the credibility of the witnesses, and could discard the testimony of any witness, if they believed from the testimony that such witness had not sworn truthfully. The majority opinion approves this instruction, holding that it does not embody the *falsus in uno, falsus in omnibus* doctrine. It appears to me to be more vicious even than the instructian condemned in *Bell* v. *State,* 90 Miss. 104, 43 South. 84; *Railway Co.* v. *McCoy,* 85 Miss. 391, 37 South. 706;

*Railway Co. v. Hedrick,* 62 Miss. 28; *Finley* v. *Hunt,* 56 Miss. 221, and *Gaines* v. *State,* 48 South. 182. For in all those cases the instruction contained the qualification that the false testimony must have been as to some material fact, while this instruction informs the jury that they may disbelieve a witness entirely if he "has not sworn truthfully"—a fair interpretation of which, in my judgment, is that the jury were authorized to discard the testimony of any witness if he had sworn falsely as to any fact, whether material or immaterial, and whether such false swearing was willful or corrupt. In a close case like this, where the principally interested witness is the defendant, such a charge may have a most harmful effect.