COOK *v.* STATE.

(Division A. March 8, 1943)

[12 So. (2d) 137.   No. 35171.]

**M. V. B. Miller** and **J. V. Gipson,** both of Meridian, for appellant.

**Greek L. Rice**, Attorney General, by **Russell Wright**, Assistant Attorney General, for appellee.

Argued orally by **M. V. B. Miller**, for appellant, and by **Russell Wright**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellant was indicted for murder, convicted of manslaughter with the recommendation by the jury that he be given "the minimum sentence," which the court seems to have observed by sentencing him to only two years in the penitentiary. At the close of the evidence the appellant requested but was refused a directed verdict of not guilty.

The homicide occurred about eleven o'clock at night on the sidewalk in front of the Post Office Cafe in Meridian. The appellant was 52 and the deceased was said to be about 30 or 35 years old. Three fingers on the appellant's right hand had been cut off several years before the the homicide, leaving only the thumb and index finger thereon. This index finger developed a sore of some sort at or near its tip, was treated by a physician with radium and was bandaged at the time of the homicide.

There were only two eye-witnesses to the homicide, the appellant and Jenkins, a policeman. Jenkins testified for the state in substance as follows: A few moments prior to the homicide he was standing on the sidewalk on the opposite side of the street from the front entrance to the Post Office Cafe and saw Smith, the deceased, standing on the sidewalk in front of the cafe, there being sufficient light therefor from the cafe and other nearby buildings. He then started down the street and had gone only a few steps when a noise in front of the cafe attracted his attention, and on turning and looking in that direction he saw the deceased strike the appellant and knock him back

seven or eight feet against a parked car and continue to advance on him. The appellant arose and began stabbing at Smith with his left hand. Smith hit the appellant, rapidly and hard several times, causing the appellant to stagger. Jenkins immediately crossed the street, separated the combatants, asked for and received from the appellant a knife he had in his left hand, the appellant appearing to be dazed. Smith was cut several times and died from the effect of one of his wounds. Jenkins did not see the beginning of this combat, nor hear what the combatants said.

The appellant's testimony in substance is: Smith owed the appellant a debt, for what does not appear, which he had declined to pay and on which the appellant had sued him in the court of a justice of the peace. The appellant went to the Post Office Cafe to obtain a drink of some sort before retiring for the night. He was driving an automobile and when he parked it in front of the cafe Smith, the deceased, accompanied by two women, passed in an automobile but immediately returned and parked the automobile near that of the appellant. The appellant then went into the cafe, ordered and was served a cup of Ovaltine, sitting at the lunch counter for that purpose. The deceased then, accompanied by the two women, came into the cafe and went to the mezzanine floor thereof, but Smith came back to the main floor unaccompanied by the women, and passed back and forth behind the appellant several times, and on being asked by a waitress if he wanted anything seated himself at the counter between the appellant and the cafe door and ordered a cup of coffee. After drinking the Ovaltine the appellant started to leave the cafe but stopped a minute or two at the cashier's desk and while standing there the deceased passed him and went out the front door of the cafe. Employees of the cafe also so testified as to what occurred in the cafe.

When the appellant stepped from the cafe onto the side-walk he was immediately accosted by the deceased, and what then occurred can best be told in the appellant's own language. "When I got out the door, Mr. Smith was standing against the brick pillar, that is standing there by the concrete pillar. And as I got out, he says to me, 'What in the hell did you mess me up down there?' I says, 'I didn't mess you up; I just wanted my money.' He says, 'You could have got your money.' I says, 'I wrote you, asked you to stop and see me.' 'You are a God damned lie'—and struck at me."

This blow was warded off by the appellant but was followed by another on his head which knocked him to his knees, and when the appellant stood, or attempted to stand up, he was again knocked down by the deceased who continued to attack him. The appellant succeeded in getting a knife from one of his pockets with which he proceeded to jab at the deceased, holding it in his left hand, when the policeman Jenkins appeared on the scene and separated them. The knife used by the appellant was one that he usually carried in his pocket and, accord-ing to his evidence, he was dazed by the deceased's blows and resorted to the knife for the purpose of defending himself from the attack the deceased was making on him.

The only conflict between Jenkins' testimony and that of the appellant is that the appellant did not remember falling against an automobile. This conflict, if such it is, is of no consequence. The appellant's version of the be-ginning of the combat fits perfectly into what Jenkins saw, and that the deceased intended to assault the ap-pellant is indicated by what occurred in the cafe.

The appellant had the right to defend himself against the attack made on him by the deceased, and the only question to be determined is whether or not he had the right to use a deadly weapon for that purpose. He had the right to use such a weapon if, but not unless, it rea-sonably appeared to him to be necessary to protect him-self from death or great bodily harm at the hands of the

deceased. A mere assault with the fists usually indicates that the assailant intends only to inflict a beating on the one assaulted—to inflict pain and humiliation but not great bodily harm, Hall v. State (Miss.), 1 So. 351; Waldrop v. State, 98 Miss. 567, 54 So. 66; Smith v. State (Miss.), 6 So. (2d) 134, but where the assailant is much superior physically to the one assaulted, the character of the assault, though with the fist only, may be such as to reasonably indicate that the one assaulted is in danger of such great bodily harm as to justify the use by him of a deadly weapon in defending himself from the assault. Hill v. State, 94 Miss. 391, 49 So. 145; Id., 97 Miss. 304, 52 So. 630; Waldrop v. State, supra; Howard v. State, 182 Miss. 27, 181 So. 525; 30 C. J. 74; 26 Am. Jur., Homicide, Section 144. One repelling such an assault with a deadly weapon acts always at his peril and whether he was justified in the use of such a weapon is always a question of fact, and is for the determination of the jury, unless no reasonable inference appears from the evidence except that the use of the weapon reasonably appeared to the person assaulted to be apparently necessary for his protection from death or great bodily harm at the hands of his assailant. The evidence here presents such a case, consequently there was nothing for the jury to decide and it should have been directed to find the appellant not guilty. The appellant was suddenly, violently and without provocation assaulted by the deceased, who rapidly and continuously struck him with such force as to knock him down twice and to daze him. Because of his age compared with that of the deceased, and the fact that he could use but one hand in defending himself, the appellant was practically at the mercy of his assailant and the only thing he could do to protect himself from the great bodily harm that seemed to be about to be inflicted on him was to secure and use for that purpose the knife that he had in his pocket.

The judgment of the court below will be reversed and the appellant will be discharged.

So ordered.