JEFFERSON *et al. v.* YAZOO & M. V. R. Co. *et al.*

(In Banc. Dec. 6, 1943. Suggestion of Error Overruled Jan. 24, 1944.)

[15 So. (2d) 681. No. 35476.]

John T. Smith, W. B. Alexander and W. D. Jones, all of Cleveland, for appellants.

452

Hugh F. Causey and Dugas Shands, both of Cleveland, and Lucius S. Burch, Jr., of Memphis, Tenn., for appellees.

**McGehee, J.,** delivered the opinion of the court.

On the former appeal herein, as reported in 194 Miss. 729, 11 So. (2d) 442, we reversed and remanded this case because we were of the opinion that the evidence presented and issue of fact for the determination of the jury under proper instructions, and that it was therefore error for the trial court to have granted the peremptory instruction in favor of the defendants. Accordingly, upon a retrial the issue was submitted to the jury for decision and with the result that a verdict was rendered by the jury of its own volition in favor of the defendants. Nevertheless, we are not relieved of the responsibility of now inquiring into whether or not the facts were decided under proper instructions in the light of the testimony, even though it may be said that the proof on both trials was substantially the same, and this is especially true if it can now be said that less excuse has been shown for the killing of plaintiffs' intestate by the appellee Waldrop, while acting as a patrolman and special agent of the

appellee railroad company, than was disclosed on the former trial.

As is set forth in the statement of facts contained in the opinion of the court on the former appeal, and which were again disclosed on the second trial, the occasion of the difficulty in which David Jefferson was slain by the patrolman and special agent Waldrop was that the latter was holding him by the coat-tail while standing guard at his side with a pistol in his hand, because of the fact that Jefferson was intercepted a short distance from the railroad right of way on an exceedingly cold night with a sack of coal which he had either gathered alongside the railroad track, after it had jolted off the cars, or which he had taken from a pile at the coal chute, the proof failing to show which except for the testimony of two other persons taken into custody on the same occasion who said that Jefferson had inquired of them before going to the railroad whether or not he would be able to get some coal down there and that they told him that he may be able to "scrape up" a sack full.

It is claimed by the special agent Waldrop that while he was standing guard over Jefferson, and while the officer, Fred Conner, was taking the other two persons in custody nearly sixty feet away, that Jefferson struck him with his fist and freed himself of the restraint, and that he thereafter kept "pounding" Waldrop while the latter was shooting him five times. And it was shown that Jefferson was shot once in the jaw, twice through his right arm, that he received a flesh wound in his side, and that the fatal shot was in the back near the spinal cord between his shoulders. The special agent was asked: "All right, now then, when you fired that first shot, Mr. Waldrop, that was, at what time?," and he answered: "That was right after he hit me, the first time, and I had backed away from there, about six feet," and he further testified that Jefferson had started "pounding" him with his fist again "after he had backed away, when the first shot was fired." The defendants

introduced one of the other persons taken into custody who testified of having heard only one lick pass and some "scuffling," but no words interchanged. The officer Conner and the other witness heard no words or licks passed. However, Waldrop testified that when Jefferson hit him and freed himself from restraint that he asked him "What in the hell do you mean? Have you gone crazy?" and that every shot which he then fired at Jefferson was fired by him as he was backing away and as Jefferson was approaching and striking him. He further testified that after the first shot was fired, the other four were fired while he was down on one knee, although the shot in Jefferson's back ranged about one and one-half inches downward.

It further appears from the testimony of Waldrop himself on the last trial that Jefferson was searched by the officer Conner in the presence of the witness immediately before the shooting occurred, and all the proof disclosed that the deceased was unarmed.

There was testimony showing that Waldrop was about 45 years of age and weighed 188 pounds, whereas the deceased was 22 years of age and weighed 170 pounds.

In the case of Hall v. State, Misc., 1 So. 351, 352, this court said: "Nothing appears in the evidence tending to show that there was any disparity in age, size, or strength between the deceased and the defendant, and, in the absence of such evidence, the first instruction for the state was not erroneous. One may not repel the attack of an unarmed man, not his superior in physical power, by slaying him; for such attack does not furnish sufficient evidence to one of ordinary strength and courage to anticipate either that his life will be taken, or 'great bodily harm' done, such as justifies the killing of his adversary." Again, the Court said in the case of Hill v. State, 94 Miss. 391, 49 So. 145, 146, that: "There may be many cases in which the disparity between the combatants is so overwhelming that the one of superior physi-

cal power may inflict great bodily harm, or death itself, by mere blows with the hands or feet."

On the second appeal of the Hill case, supra, reported in 97 Miss. 304, 52 So. 630, the court recognized that the rule in homicide cases to the effect that the great bodily harm, in contemplation of law, does not mean such harm as may be inflicted with the hands and feet, is subject to the modification that, where the deceased was a man larger and stronger than defendant, so that defendant was liable to receive great bodily injuries at his hands, defendant was justified in using a deadly weapon to protect himself, though the deceased was wholly unarmed. If this be the law in a criminal case where the accused is being tried for his life, then it should most assuredly be the law in a civil case where there is no disparity in size and strength in favor of the person slain and where the trial is one only for the determination of liability for damages.

There is present in the case at bar, however, the further circumstance that the special agent claimed that it reasonably appeared to him that Jefferson might have succeeded in taking away from him the loaded pistol that he then held in his hand, although he does not contend that the deceased ever made any attempt or manifested any intention to seize this weapon. But assuming that the case should have been submitted to the jury on the issue of self-defense, as we have already held in the former opinion, we think that the case should be again reversed and remanded for the reason that in the foregoing state of the record the jury was instructed, in substance, that "if Waldrop acted from hurried considerations, induced by reasonable evidence," he would "not be held responsible for a mistake as to the extent of the actual danger," and that he "was justified in considering or anticipating the consequences of a further attack, if such might appear to a reasonably prudent person to be present, urgent and otherwise unavoidable except by flight," etc. This instruction virtually told the jury

that after Jefferson had first struck Waldrop with his fist, the latter could anticipate a "further attack," after he had "backed away about six feet," and at a time when the deceased was not trying to seize the weapon; and that he could shoot him in the back if he thought he could thereby prevent a further attack by the deceased, whether such attack was then in progress or imminent and impending or not. It has never been the law in this state that one is justified in taking the life of another provided he acts from "hurried considerations" and anticipates a "further attack." The slayer must have believed, and had good reason for believing, at the time he kills another that he is then in danger of losing his own life or sustaining great bodily harm at the hands of the deceased, and he is not justified in slaying his adversary because he may anticipate a further attack unless he leaves the scene of the difficulty.

The court further instructed the jury for the defendants that even though neither Conner nor Waldrop had a warrant for the arrest of the said Jefferson, and that he was unlawfully arrested, and had the right to resist such arrest by striking Waldrop with his fists, yet that if the jury believed (not if Waldrop believed) that if the said Jefferson, by continuing the assault would have gotten Waldrop (not if he was at that time) in a position where as a reasonably prudent person he might reasonably believe that his life would be put in danger, or he would suffer great bodily harm, then Waldrop had the right to shoot and kill said Jefferson even though he was unarmed and was only striking Waldrop with his fists. This instruction ignores the question of whether or not the deceased was trying to seize the pistol from Waldrop, intending thereby to disarm him and at the same time to arm himself, and also fails to require that Waldrop should have been in immediate danger, either actual or reasonably apparent to him, instead of to the jury, at the time of the shooting. Moreover, the instruction was in conflict with one granted to the plaintiffs as to the rights of Jef-

ferson to use such force as was reasonably necessary to free himself from the arrest, if it was unlawful.

From what we have said, it follows that the case should be reversed and remanded.

Reversed and remanded.

**Smith, C. J.**, delivered a dissenting opinion.

As I understand the controlling opinion, it holds that although Jefferson attacked Waldrop with his bare hands only, nevertheless that fact did not deprive Waldrop of the right to defend himself with a deadly weapon if "it reasonably appeared to him that Jefferson might have (then and there) succeeded in taking away from him the loaded pistol that he then held in his hands," and then have attacked Waldrop with it. In this I concur.

If there is error in either of the two instructions for the appellant, referred to in the controlling opinion, which the reporter will set out in full,[1] the jury, in the

[1]"The Court instructs the jury for the defendants that the law does not require that Waldrop should have been in actual danger or then be threatened with danger at the hands of said Jefferson to exercise the right of self-defense, but the law considers when Waldrop was threatened with danger, if the proof shows that he was so threatened he may judge from appearances and determine therefrom as to the actual state of things surrounding him, and in such case, if Waldrop acted from hurried considerations, enduced by reasonable evidence, the defendants will not be held responsible for a mistake as to the extent of the actual danger, and if the jury believe from the evidence that at the time of the shooting the conduct of the deceased Jefferson was such as to indicate to the mind of a reasonably prudent man the belief that the said Jefferson then had the means and purposes to kill Waldrop, or do him some great bodily harm, then Waldrop was justified in considering or anticipating the consequences of further attack upon him, if such might appear to a reasonably prudent person to be present, urgent and otherwise unavoidable except by flight, and protect his own life or limb by the taking of the life of said Jefferson, even though the jury in the light of subsequent developments may believe that the danger was not real but only apparent, and if the jury so believe they should find for the defendants."

light of the evidence and of other granted instructions, could not, or at least, should not, and do not, appear to have been, misled thereby. Jefferson's attack was made on Waldrop in the dark, and there was no cessation in it, but from its beginning it continued fast and furious, lasting only a few seconds, during which Waldrop had to think and act quickly. The words quoted from one of the instructions, that "If Waldrop acted from hurried consideration, induced by reasonable evidence, the defendants will not be held responsible for a mistake as to the extent of the actual danger," should not be lifted from and construed independent of their context; when construed in the light of the entire instruction and the evidence, they will appear to set forth, though not in the most apt language, what the court correctly instructed, the jury in another instruction for the appellee, i.e.: "That in passing upon the conduct of the defendant Waldrop on the occasion in question, the jury should not judge his conduct by the light of the after-developed events, nor hold him to the same cool and correct judgment which the members of the jury are able to form, but the jury should put themselves in Waldrop's place

"The Court instructs the jury for the defendants that even though neither Conner nor Waldrop had a warrant for the arrest of said Jefferson, and even though the theft of the coal, if such was committed by the said Jefferson, was not committed in the presence of either of the said Conner or Waldrop, and even though you believe from the evidence that the deceased Jefferson was unlawfully arrested and arrested without justification, and because of such unlawful and unjustifiable arrest said Jefferson had the right to resist such arrest by striking Waldrop with his fists, yet that did not cut Waldrop off from his right of self-defense if you believe from the evidence that if the said Jefferson, by continuing the assault would have gotten Waldrop in a position where as a reasonably prudent person he might reasonably believe that his life would be put in danger, or he would suffer great bodily harm at the hands of said Jefferson even though said Jefferson was unarmed and was only striking Waldrop with his fists."

and judge of his acts by the facts and circumstances by which he was then surrounded.''

The words, ''was justified in considering or anticipating the consequences of a further attack, if such might appear to a reasonably prudent person to be present, urgent and not otherwise avoidable except by flight,'' also quoted from that instruction, when considered in the light of their context and the evidence, do not, I submit with deference, mean what they are here said to mean, and could not have misled the jury. As hereinbefore said, the attack by Jefferson on Waldrop was not only continuous, but was fast and furious, without any break therein except the intervals of time between the blows that were being delivered by Jefferson as fast as they possibly could be. The attack was in progress from its inception until Jefferson was killed; and if it reasonably appeared to Waldrop that Jefferson then had the means and purpose to do him great bodily harm, that danger was imminent and impending every moment from the time Jefferson struck the first blow until he was killed.

When the other criticized instruction is construed in the light of the other instructions and of the evidence no reversible error, if error at all, seems to me to appear therein. Waldrop had testified that it appeared to him, and as hereinbefore pointed out, he had to think and act quickly, that Jefferson might then and there take his pistol from him, and ''I figured if he ever got my pistol, why, I would not be here today.'' That was the evidence on which this instruction was based, and it is not, in my judgment, in conflict with the appellant's instruction as to the right of Jefferson to use force to free himself from an unlawful arrest, if he was so arrested.

The judgment of the court below should be affirmed.