197 So.2d 811 (1967)
William Wylie REED
v.
STATE of Mississippi.
No. 44414.
Supreme Court of Mississippi.
April 10, 1967.
Suggestion of Error Overruled May 2, 1967.
*812 Poole & Marks, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice.
The defendant, William Wylie Reed, appellant here, was indicted on a charge of murder by the Grand Jury of the Second District of Jones County, Mississippi. He was tried and convicted of manslaughter, and sentenced to serve a term of nine years in the State Penitentiary. He has appealed to this Court and complains that the trial court should have granted him certain instructions based upon Mississippi Code Annotated section 2525 (1956), submitting to the jury his theory that he was justified in assaulting the deceased because he had insulted him. He also complains that two instructions based upon sub-sections (b) and (c) of Mississippi Code Annotated section 2219 (1956) were erroneously refused. This statute makes homicide excusable for accident and misfortune, or in cases where such killing occurs in sudden combat, not in a cruel and unusual manner. The appellant complains of an instruction granted to the State permitting the jury to determine whether or not the killing was "necessary". On a motion for a new trial, the defendant alleged that a witness for the State, who had been previously introduced, but whose testimony was held to be incompetent by the court, was again put upon the witness stand by the State in order to influence the jury to the prejudice of defendant. Finally, it is charged that the district attorney commented in his concluding argument upon the failure of the defendant to testify.
The facts in this case are outlined in a statement given to the officers by the defendant. His wife and members of his family corroborated parts of this statement. This statement shows that on the afternoon of the homicide, the defendant went to Roy's Cafe and drank beer, and there he *813 met a stranger, the deceased Tommie G. Parker. Defendant had several drinks with the deceased and finally went out to a men's room in the back of the cafe. Tommie C. Parker followed the defendant to the rest room, and there made an indecent homosexual proposal to him. The defendant was incensed. He became excited and struck the deceased, and kicked him twice on the head while deceased was lying on the ground. When he left the deceased, he was alive. The testimony also shows that the deceased was discovered by the owner of the cafe. He was either dead or dying at the time he was discovered. There was considerable blood on the ground where the deceased was lying. His pants were unzipped, and one of the pockets to his pants was torn. The officers said they did not find his watch or any money upon the body of the deceased.
At the close of the testimony for the State, the defendant made a motion asking the court to find the defendant not guilty, or, in the alternative, to reduce and restrict the charge to manslaughter. The court overruled the motion for a directed verdict but sustained the second part of the motion so as to reduce the charge to manslaughter. After all of the testimony had been introduced, the case was submitted to the jury and the jury returned a verdict of manslaughter.
The defendant requested the following instructions, which were refused:
(a)
"The court instructs the jury for the defendant that the jury may consider and determine whether insulting words were used by the deceased to the Defendant, and the jury may further determine whether such words were a sufficient excuse for or justification of the offense committed. And in this case, if you believe that the deceased used insulting words to the Defendant at the time of the commission of an assault upon the deceased; and if you further believe that such words constituted a sufficient excuse for or justification of the offense committed, then it is your sworn duty to find the Defendant not guilty."
(b)
"The court instructs the jury for the Defendant that if you believe that the deceased used insulting words toward the Defendant at the time of an assault upon the deceased by the Defendant, and if you further believe that such insulting words were a sufficient excuse for or justification of the assault; and if you further believe that the homicide then resulted by accident and misfortune in the heat of passion, and upon a sudden and sufficient provocation, then it is your sworn duty to find the Defendant not guilty."
(c)
"The court instructs the jury for the Defendant that the killing of any human being by the act, procurement, or omission of another is excusable when committed upon sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner.
"And in this case, the burden is upon the State of Mississippi to prove beyond a reasonable doubt that the killing of the deceased was not committed upon any sudden combat, without undue advantage being taken and without any dangerous weapon being used, and not done in a cruel or unusual manner.
"And if you believe the State of Mississippi has failed to sustain this burden of proof, then it is your sworn duty to find the Defendant not guilty."
The first two instructions above-quoted, (a) and (b), simply advised the jury that it might decide whether or not the insulting words were a sufficient excuse or justification for killing the deceased. In short, it appears to be the theory of the defendant that one may kill a person for putting hands upon him and insulting him. This is not *814 the law. Mississippi Code Annotated section 2525 (1956) is as follows:
"In all trials for assault and battery, or for an assault, the defendant may give in evidence, in excuse or justification, any insulting words used by the person on whom the assault or assault and battery was committed, at the time of the commission thereof, toward the defendant, and the jury may consider and determine whether such words were or were not a sufficient excuse for or justification of the offense committed."
It has been said: "Words do not of themselves justify assault; a defendant must justify the assault by the words." Baker v. State, 192 Miss. 406, 409, 6 So.2d 315, 316 (1942).
Many years ago, in the case of Hall v. State, 1 So. 351, 352 (Miss. 1887), this Court pointed out that "One may not repel the attack of an unarmed man, not his superior in physical power, by slaying him; for such attack does not furnish sufficient evidence to one of ordinary strength and courage to anticipate either that his life will be taken, or `great bodily harm' done, such as justifies the killing of his adversary." See: Holland v. Martin, 214 Miss. 1, 56 So.2d 398, 58 So.2d 62 (1952); Jefferson v. Yazoo & M.V.R.R., 195 Miss. 450, 15 So.2d 681 (1943); Cook v. State, 194 Miss. 467, 12 So.2d 137 (1943); Smith v. State, 6 So.2d 134 (Miss. 1942); Waldrop v. State, 98 Miss. 567, 54 So. 66 (1911).
We are of the opinion that the court was correct in refusing to grant both of the above-quoted instructions, (a) and (b), because these instructions are based upon Mississippi Code Annotated section 2525 (1956) which applies to charges of assault and battery or assault, and not homicide. Insulting words can never justify a homicide, unless they are of such nature as to cause defendant to believe he is threatened with grave, impending danger.
We are also of the opinion that instruction (c) for defendant was properly refused by the court. This instruction is based upon Mississippi Code Annotated section 2219 (1936), wherein a homicide is excusable when committed by accident and misfortune, or where death occurs as a result of sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.
The defendant contends that the deceased lost his life as a result of a "freak homicide." This contention is founded upon the testimony of the doctors who were witnesses in the case. The pathologist testified that the deceased died as a result of suffocation. The bony structure of his mouth was crushed and pushed back into his throat, obstructing the air passage, and his tongue was swollen and had fallen back into his throat. However, the doctor testified that it would have taken a severe blow to fracture the deceased's mouth, but he was of the opinion that the injury indicated that he had received multiple blows.
The facts admitted by the defendant, pictures of the deceased, and testimony of the doctors, show beyond a reasonable doubt that death was not the result of an accident or misfortune, but, on the other hand, the homicide was done in a cruel and unusual manner, by kicking the head of the deceased when he was helpless. We therefore hold that instruction (c), above set forth, was properly refused by the trial judge. The facts here shown are not applicable to the requirements of Mississippi Code Annotated section 2219 (1956). Conner v. State, 179 Miss. 795, 177 So. 46 (1937); Brice v. State, 167 Miss. 255, 148 So. 348 (1933).
During the argument, the prosecuting attorney said: "Look at the defendant. I have observed him for the past two days, and he sat and showed no emotion whatever during the trial of this cause." The defendant's attorney objected to this argument and the trial judge overruled the objection. The attorney continued his argument with reference to the appearance of *815 the defendant and his failure to show emotion. A bill of exceptions was taken to this argument and the ruling of the court. At the conclusion of the trial a motion was made for a new trial, in which it was alleged that the argument of the attorney was "tantamount to a comment upon the Defendant's failure to testify and was, therefore, violative of the Fourteenth Amendment to the United States and section  of the Constitution of the State of Mississippi."
The general rule that prosecuting attorneys should refrain from commenting upon the appearance of a defendant, when he has not been introduced as a witness, is set out in 23A C.J.S. Criminal Law § 1102, at page 192, (1961), in the following language:
"Except where his identity is in issue, or where the remark is with respect to his appearance while he was testifying, it is generally held improper to remark on the personal appearance of accused, although the circumstances and the nature and language of the comment itself may take a particular case out of the general rule, as where there is no intimation in the remark that accused has a bad or guilty look."
In the case of People v. Peete, 54 Cal. App. 333, 370, 202 P. 51, 68 (2nd Dist., Div. 2, 1921), the defendant did not take the stand to testify in his own defense. The district attorney, notwithstanding this fact, "commented upon her appearance while sitting as a prisoner before the bar, saying, among other things, that an innocent woman, facing an ordeal such as defendant was then passing through, could not sit in the courtroom without a tear." The District Court of Appeals said: "This conduct was clearly reprehensible and inexcusable, and it was the duty of the court to have interposed for defendant's protection, as doubtless it would have done had its attention been specifically called to the remarks by timely objection." No objection was made and the case was affirmed. See the following cases, cited by appellant, holding that a reference to a defendant personally, when he did not take the witness stand in his own defense, required a reversal: Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956); Gurley v. State, 101 Miss. 190, 57 So. 565 (1912); Bestor v. State, 209 Ala. 693, 96 So. 899 (1923); Perez v. Territory of Arizona, 12 Ariz. 16, 94 P. 1097 (1908); Bessette v. State, 101 Ind. 85 (1884); State v. Davis, 190 S.W. 297 (Mo. 1916); Thompson v. State, 113 Tex.Cr.R. 45, 19 S.W.2d 316 (Tex. 1929).
In our jurisdiction, the trial courts and the Supreme Court have been very careful to require fair treatment to the defendant in an argument to the jury. We do not find that this Court has ever reversed a case, based upon the argument that the lack of emotion, as shown by defendant's features, during the trial, was evidence of defendant's guilt. The argument of the prosecuting attorney in the instant case called the jury's attention to the fact that the defendant sat in the courtroom and showed no emotion, and the implication was clear that, for that reason, he must be guilty.
There are several cases heretofore reported in which this Court reversed the judgment of the lower court when the argument of the attorneys cast aspersion upon the defendant's features in order to create prejudice against him because of his race. In the case of Funches v. State, 125 Miss. 140, 150, 151, 87 So. 487 (1921), the prosecuting attorney said that "The defendant * * * has enough African in him to make him as mean as Hades itself." In Harris v. State, 209 Miss. 141, 147, 46 So.2d 91, 93 (1950), the district attorney referred to the defendant as a "black gorilla." In Hampton v. State, 88 Miss. 257, 259, 40 So. 545 (1906), the district attorney referred to the defendant as "this mulatto".
There is at least one Mississippi case reported where this Court reversed the judgment of the lower court because the argument of attorneys with reference to a witness in a civil case was not proper. In *816 Brush v. Laurendine, 168 Miss. 7, 11, 12, 150 So. 818, 819 (1933), during the argument, one of the attorneys made reference to a witness for a corporation, and when the attorney for the corporation objected, he said to the jury: "(W)ell, if you object to that, I will change it, and say when the Mathew Canning Company is sued, they bring in sleek, fat, pompous Dr. Blount to testify, you saw how he strutted, etc." On appeal to this Court, we had this to say with reference to this conduct:
"Whatever may be the differences in detail in respect to the practice in the various jurisdictions, all courts are agreed that it is the power and duty of the trial court to see that the privilege of argument is not abused. And where the abuse in a given case has been of such a character and has run to such an extent that there could reasonably be no denial that the abuse has been extreme and intolerable, Interstate Co. v. Garnett, 154 Miss. 325, 357, 122 So. 373, 756, 63 A.L.R. 1402, the duty of the judge is to interfere of his own motion."
We are of the opinion, and so hold, that this case must be reversed for a new trial because of the improper argument to the jury above set out. The other assignments of error need not be discussed since there will be a retrial, but we feel that we should point out that the attempt to reintroduce the witness Lloyd McGehee, after the court had advised the counsel that his testimony was not admissible, was prejudicial to the defendant, and was error. This procedure should not be repeated.
Reversed and remanded.
ETHRIDGE, C.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.