The appellant, Milford Reid Hinson, was convicted of manslaughter in the Circuit Court of Forrest County and sentenced to serve twelve years in the state penitentiary. From this verdict and judgment he appeals to this Court, assigning as error the following:
1. That the court erred in overruling defendant's motion for a peremptory instruction of "not guilty" at the conclusion of all testimony offered by the State.
2. That the court erred in overruling defendant's motion for a peremptory instruction of "not guilty" at the conclusion of all testimony offered by the State and the defendant.
3. That the verdict of the jury is contrary to the law and the evidence.
4. That the verdict of the jury is contrary to the overwhelming weight of the evidence.
These assignments will be considered together as each of them is directed to the weight of the evidence.
The record reflects that the defendant was 45 years of age at the time of the trial; that he was 5 feet 9 inches tall and weighed approximately 143 pounds. At the time of his death the victim Baggett was 41 years of age, 6 feet 2 inches tall, and weighed approximately 240 pounds. There was an obvious disparity in the sizes and weights of the two men. The defendant and the deceased, prior to the altercation resulting in the death of the larger man, were co-workers and friends, and apparently there had never been any ill feeling between the two. They were engaged in the business of selling encyclopedias and *Page 38 
Bibles. The course of their business necessitated a change of locale from Forest, Mississippi, to Hattiesburg, Mississippi. At the latter city Baggett engaged a two-bedroom apartment which the two men occupied along with their two female co-workers and consorts. Their arrangement was that each shared in the cost of the apartment. Baggett and Hinson purchased the food for the group which was prepared by the two women. Baggett and one of the women occupied one of the bedrooms and Hinson and the second woman occupied the other. This was a continuation of an arrangement which had existed for five or six weeks prior to their move to Hattiesburg.
On the morning of September 14, 1967, the day Baggett was killed, he left the apartment to take care of some business. Hinson and the two women remained in the apartment until late in the afternoon and thereafter drove around in the city of Hattiesburg, stopping on several occasions to refresh themselves with beer. They returned to the apartment a little before nine in the evening. Upon entering they observed a note lying on a table, which was introduced into evidence, apparently left by Baggett, which stated: "I am drunk so prepare yourself for it or else. Bob." There was also evidence that another note, not introduced into evidence, was left by Baggett to the effect that Hinson should pick up some encyclopedias which he had previously sold, but which had been declined by the customer on delivery. The import of this evidence was that Hinson was angered thereby. According to the testimony of Baggett's mistress, Mrs. Skipper, Hinson then stated: "You can tell that big son of a bitch that I said when he gets here to come on, that I'm prepared for him." Immediately thereafter the doorknob rattled and Hinson and the two women went to the door, which was opened either by Hinson or by Baggett, and Baggett entered the apartment. According to the testimony of Mrs. Skipper, Hinson greeted Baggett with the words, "come on in you big son of a bitch * * * I'm waiting for you;" and then immediately struck Baggett in the face, whereupon Baggett dropped the beer and knocked Hinson across a coffee table and on to a couch. The two women attempted to separate the men, but Hinson pushed between them and again struck Baggett. Baggett responded by knocking Hinson across a chair and was leaning over him to continue the altercation when he was shot in the left temple by Hinson. At the time the shot was fired Mrs. Skipper was tugging at the arm of Baggett in a continuing effort to separate the two men.
The testimony of Mrs. Lummus, the mistress of Hinson, and of Hinson himself, is virtually the same as that of Mrs. Skipper with the exception of which of the two men struck the first blow. The latter witness's version of the altercation was that Baggett entered the apartment, dropped the beer, and started fighting. Hinson testified that he was being severely beaten about his face and head by the larger man and that he drew a small caliber pistol from his pocket and fired in necessary self-defense. He testified further that Baggett was on top of him and that after the shot was fired, he had to remove himself from beneath the body of Baggett. After the shooting, the defendant Hinson requested that an ambulance be called and that the police be notified.
During the course of the trial photographs of the defendant, made within a few hours after the fatal shot was fired, were introduced into evidence without objection. They showed the defendant's face, head and neck. These photographs, when viewed in the light most favorable to the defendant, depicted at best only a very small bruise or swelling on the defendant's left forehead. They reflected no abrasions or bruises to in any way corroborate the defendant's testimony of the terrible beating he underwent at the hands of the deceased.
Thus the jury had for its consideration the testimony of the three participants to *Page 39 
the event, as well as the photographs. Their verdict was against the defendant, and after a careful review of the record we cannot say that it was against the overwhelming weight of the evidence.
In Cook v. State, 194 Miss. 467, 12 So.2d 137 (1943), though there the Court reached a different result, the applicable rule of law was stated:
 The appellant had the right to defend himself against the attack made on him by the deceased, and the only question to be determined is whether or not he had the right to use a deadly weapon for that purpose. He had the right to use such a weapon if, but not unless, it reasonably appeared to him to be necessary to protect himself from death or great bodily harm at the hands of the deceased. A mere assault with the fists usually indicates that the assailant intends only to inflict a beating on the one assaulted — to inflict pain and humiliation but not great bodily harm, Hall v. State, Miss., 1 So. 351; Waldrop v. State, 98 Miss. 567, 54 So. 66; Smith v. State, Miss., 6 So.2d 134, but where the assailant is much superior physically to the one assaulted, the character of the assault, though with the fist only, may be such as to reasonably indicate that the one assaulted is in danger of such great bodily harm as to justify the use by him of a deadly weapon in defending himself from the assault. Hill v. State, 94 Miss. 391, 49 So. 145; Id., 97 Miss. 304, 52 So. 630; Waldrop v. State, supra; Howard v. State, 182 Miss. 27, 181 So. 525; 30 C.J. 74; 26 Am.Jur., Homicide, Section 144. One repelling such an assault with a deadly weapon acts always at his peril and whether he was justified in the use of such a weapon is always a question of fact, and is for the determination of the jury, unless no reasonable inference appears from the evidence except that the use of the weapon reasonably appeared to the person assaulted to be apparently necessary for his protection from death or great bodily harm at the hands of his assailant. * * * 194 Miss. at 472-473, 12 So.2d at 138. (Emphasis added.)
We conclude that there were sufficient facts for the case to be submitted to the jury and we cannot state that its verdict is against the overwhelming weight of the evidence. The case will therefore be affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, SMITH, and ROBERTSON, JJ., concur.