776 So.2d 698 (2000)
Vickie McKay REYNOLDS a/k/a Vickie Darlene McKay, Appellant
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01343-COA.
Court of Appeals of Mississippi.
June 13, 2000.
Rehearing Denied November 14, 2000.
Certiorari Denied January 25, 2001.
*699 Mose Lee Sudduth, Jr., Columbus, for Appellant.
Office of the Attorney General by Charles W. Maris, Jr., for Appellee.
EN BANC.
KING, P.J., for the Court:
¶ 1. A Lowndes County Circuit Court jury convicted Vickie McKay Reynolds of manslaughter. Having been adjudicated an habitual offender Reynolds was sentenced to serve twenty years without the possibility of parol or probation. She appeals arguing: 1) the lower court committed reversible error for failing to give or put in proper form appellant's theory of defense; 2) the lower court erred in allowing appellant's prior conviction for grand larceny to be used by the State for impeachment purposes and allowing improper impeachment by the State; 3) the lower court erred in allowing the State to strike black jurors off the venire panel without valid race-neutral reasons; and 4) the lower court erred by refusing appellant's requested instruction D-7. Finding prejudicial error occurred when the trial court failed to grant Reynolds's instruction D-7, a "no retreat" instruction, we reverse and remand.

FACTS
¶ 2. On July 22, 1997, Reynolds lived with her children and mother at the mother's home in Columbus. Also living in the house were Reynolds's sister, Teresa Bryant, Bryant's children, and Bryant's boyfriend, Charles White, the victim in this case. On that evening, White, who was intoxicated, was being abusive towards Bryant. As Reynolds and Bryant walked through the house, White "swung past" Reynolds and struck Bryant. White then reached towards a table, which held a telephone and a steak knife. Unsure of which one White was attempting to pickup, Reynolds, grabbed the knife. White then grabbed the telephone, and lunged towards Reynolds. In the ensuing confusion, White suffered a fatal chest wound, approximately three and one-half inches deep. Reynolds testified that she did not remember stabbing White.

ANALYSIS

The trial court committed error in refusing to grant Reynold's "no retreat" self-defense instruction.
¶ 3. Reynolds argues that the trial court erred in failing to grant her proposed jury instruction D-7, a "no retreat" instruction. The State contends that having failed to object to the refusal of the instruction, Reynolds is now procedurally barred from raising this issue. This contention is an incorrect statement of the law. Litigants are not required to object to the denial of instructions which they have offered. The issue of improper denial is preserved by tendering the instructions and asking that they be given. Duplantis v. State, 708 So.2d 1327, 1339-40 (Miss.1998). Neither is it necessary to renew the objection in a motion for new trial. Jackson v. State, 423 So.2d 129, 131-32 (Miss.1982). Accordingly, there is no procedural bar to this issue.
¶ 4. Reynolds asked for a "no retreat" or "flight" self-defense instruction *700 which was denied by the trial court. Reynolds's proposed instruction was as follows:
The court instructs the jury that while the danger which will justify the taking of another's life must be imminent, pending, and present, such danger need not be unavoidable except by killing in self-defense. The Defendant, Vickie McKay, need not have avoided the danger to her person presented by the deceased, Charles White, by flight. So long as the defendant was in a place where she had the right to be and was not the immediate provoker and aggressor, she may stand her ground without losing the right of self-defense.
¶ 5. "It has always been the law in this state that a defendant is not deprived of the right to claim self-defense in a slaying even if he could have avoided the threat to his safety by fleeing." Haynes v. State, 451 So.2d 227, 229 (Miss.1984).
Flight is a mode of escaping danger to which a party is not bound to resort, so long as he is in a place where he has a right to be, and is neither engaged in an unlawful, nor the provoker of, nor the aggressor in, the combat. In such case he may stand his ground and resist force by force, taking care that his resistance be not disproportioned to the attack.
Cook v. State, 467 So.2d 203, 210-11 (Miss. 1985) (quoting Long v. State, 52 Miss. 23, 34 (1876)).
¶ 6. Reynolds was in her residence, where she had a right to be, and was neither the provoker or aggressor. She was accordingly entitled to remain there, and defend herself from attack, provided the defense was not disproportionate to the attack. Whether a steak knife was disproportionate to assault by telephone is a question of fact for the jury.
¶ 7. Central to determining this issue of proportionality is whether a telephone is a deadly weapon. The determination of what is a deadly weapon is frequently a matter of fact, rather than law. The Mississippi Supreme Court has held that items not ordinarily considered deadly weapons, can constitute deadly weapons if used with means or force likely to produce death. Pulliam v. State, 298 So.2d 711, 713 (Miss. 1974) (citing Johnson v. State, 230 So.2d 810 (Miss.1970)). Whether White's intended use of a telephone could constitute a deadly weapon if used with means or force likely to produce death involves a question of fact to be decided by the jury in light of the evidence. "The responsibility for determining the likelihood remains with the jury which is left free to give due weight to the characteristics of the parties, the place, the manner in which the item is used, and the degree of force employed." Jackson v. State, 594 So.2d 20, 24 (Miss.1992). See also Wade v. State, 724 So.2d 1007 (Miss. Ct.App.1998).
¶ 8. Recognizing these as matters of fact to be determined by the jury, Reynolds requested that the trial court instruct the jury of her right to engage in self-defense proportionate to the then existing danger and attack. This request was refused. We hold this refusal to have been error.
¶ 9. "In homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely, and the trial court's failure to do so is error requiring reversal of a judgment of conviction." Manuel v. State, 667 So.2d 590, 593 (Miss.1995) (citing Hester v. State, 602 So.2d 869, 872 (Miss.1992)). "The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury." Meshell v. State, 506 So.2d 989, 991-92 (Miss.1987).
¶ 10. In response to this issue the State contends that the "no retreat" instruction was not warranted by the facts of the case because Reynolds never testified that she stabbed White in self-defense, but testified, she could not remember intentionally stabbing him. It is the State's *701 position that since Reynolds did not remember intentionally stabbing White, she cannot argue the right to stand and defend herself or others, because "not knowing" and self-defense are two different defenses.
¶ 11. Whether White was killed as a result of an intentional stab wound, or from falling on the knife, is of no import. What is important and very clear is Reynolds testimony of having armed herself with the knife, to defend both herself and her sister from the present attack by White. Reynolds testified that she and her sister were walking past a room when White came out. He then "swung past" Reynolds and struck Bryant in the mouth, loosening Bryant's tooth. Then Reynolds saw that White was reaching down to a table to grab either a telephone or a knife. She picked up the knife, and he picked up the telephone. When White had the telephone he lunged towards Reynolds, and she had no "recollection of it [sic] afterwards of what I did."
¶ 12. Notwithstanding Reynolds inability to recall the specific moment of injury to White, it is clear that her theory of defense was always defense of herself and another not disproportionate to the immediate danger.
¶ 13. There is evidence to support Reynolds's theory that she was justified in not retreating. The trial court's denial of Reynolds's requested instruction D-7 was therefore reversible error. We are unable to say what the verdict would have been had that theory of the defense been properly presented to the jury. This Court holds the failure to give the requested instruction to be error, and accordingly reverses and remands.
¶ 14. Because this Court has found reversible error in issue four, we find it unnecessary to address the remaining issues. We also note that Reynolds has obtained new counsel, who can properly address those issues in a new trial, should they arise.
¶ 15. THE JUDGMENT OF LOWNDES COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
BRIDGES, IRVING, PAYNE, and THOMAS, JJ., concur.
SOUTHWICK, P.J., dissents with separate written opinion joined by McMILLIN, C.J., LEE and MOORE, JJ.
SOUTHWICK, P.J., dissenting:
¶ 16. The majority reverses because of the failure of the trial court to reform an offered instruction on what is described as Reynold's only defense. With respect for the majority, I find that what Reynolds argues on appeal was not argued below. Though a judge at times has a duty to reform an instruction, he does not have a duty to propose one. It is the latter that is relevant here. I find no error in the trial court's neglecting to raise an issue that defense counsel did not. I would affirm.
¶ 17. What Reynolds argues on appeal as her central defense was the fact that she was much smaller than the victim. I acknowledge that the supreme court in one case stated that disparate size as a heightened reason for self-defense could be made into an instruction, the denial of which was reversible error. That principle does not apply here because no such instruction, flawed or perfectly phrased, was tendered. Why that makes an important difference is discussed next.
¶ 18. First I point out what references in the instructions to self-defense were given. The elements of the crime instruction twice stated that the jury must find that the homicide was "not in necessary self-defense." The State itself offered a rather *702 standard self-defense instruction, but it was refused because a similar defense instruction was granted. The jury had the benefit of instruction D-6:
The Court instructs the jury that if you find that the Defendant, Vickie McKay, killed Charles White in self defense or defense of her sister, Teresa Bryant you must find Vickie McKay "not guilty." In order to avail herself of self defense or defense to her sister, Teresa Bryant, the danger ... must have been actual, present and urgent, or Vickie McKay must have had reasonable grounds to apprehend a danger on the part of Charles White to kill Vickie McKay, or her sister, Teresa Bryant, or to do ... some great bodily harm, and in addition to this, Vickie McKay must have had reasonable grounds to apprehend that there was imminent danger of some design being accomplished. It is for the jury to decide the reasonableness of the ground upon which the Defendant, Vickie McKay acted.
¶ 19. That is an excellent instruction for the defense counsel to use to make his arguments that the powerful, threatening Charles White was not really the victim of the small, scared Vickie McKay Reynolds, as she acted in reasonable fear of imminent injury to herself or her sister.
¶ 20. In addition to this instruction, the defense also wanted an instruction that Reynolds did not need to retreat. The majority quotes that rejected instruction. The majority and I agree with the trial court that the factual issue of the right of the defendant to stand her ground was not raised. There must be some basis in the evidence to make the potential for retreat and a decision instead to stand one's ground legitimate issues. For example, the State never sought to prove or even intimate that Reynolds and her sister rejected an easy means to escape. The instructions need only explain the law regarding the issues fairly raised; they should not be a treatise on all legal issues that can arise with a certain kind of crime. What was presented by evidence and properly captured in the self-defense instruction was that White was threatening to use a telephone as a weapon that could cause serious bodily harm and Reynolds reacted to that. The possibility of retreat and the need to inform the jury that there was no legal requirement that Reynolds avail herself of it just were not factual questions.
¶ 21. Instruction D-6 provides that if the act was done properly in defense of self or another, which includes the need for reasonably apprehending the victim's design for and imminent danger of doing great bodily harm, acquittal should result. The reasonableness can be affected by the disparity in size and meanness of the attacker and victim. The issue was structured for the jury.
¶ 22. Only one of the cases cited by the majority is directly on the issue that is raised on appeal. Among those that are actually on a separate point is a case in which a woman after being beaten up by her boyfriend, left the bar where the beating occurred, went to the adjacent house where she and the soon-to-be-deceased lived, got a gun, then returned to assure that such a beating would never again occur. Wade v. State, 748 So.2d 771, 773 (Miss.1999). There were no instruction issues in the case, but only a wide divergence of opinion by both the Supreme Court and previously the Court of Appeals on whether the facts justified the jury's decision that this was murder, instead of accepting the guidance of instructions on manslaughter or justifiable homicide. Id. at 773-74, citing and reviewing the three opinions in Wade v. State, 724 So.2d 1007 (Miss.Ct.App.1998).
¶ 23. Another case cited by the majority concerned whether evidence was sufficient to sustain a conviction for using a deadly weapon even though the overly-repulsed attacker was much bigger than the defendant. Hinson v. State, 218 So.2d 36, 39 (Miss.1969). Four unmarried sellers of Bibles, two men and two women, apparently reading and absorbing little of their wares, *703 paired up as mixed sex couples in two bedrooms in an apartment. After several weeks of selling and living together, the two men got into a fight and the two women tried to stop it. The smaller man shot the larger. The issue of self-defense was presented in an instruction that is not even described in the opinion, and the jury convicted Hinson of murder. The supreme court affirmed after noting that physical disparity is one of the considerations for the use of a deadly weapon in response to someone who was only using his fists. Id., quoting Cook v. State, 194 Miss. 467, 472-73, 12 So.2d 137, 138 (1943). Whether to accept was for the jury, and in Hinson it was not a question of the need for an instruction.
¶ 24. The one case that is directly on point is Manuel v. State, 667 So.2d 590 (Miss.1995). The female-accused had stabbed her boyfriend in a fight. A rejected jury instruction stated the following:
The Court instructs the jury that if the deceased, Wendell Norris, was a much larger and stronger man than the defendant, Nancy Manuel, so much so that the Defendant was wholly and absolutely incapable of coping with him in a physical combat, and was liable to receive serious and great bodily injuries at the hands of the deceased in the event that they became engaged in combat, then the Defendant was justified in using a deadly weapon to protect himself [sic] from an unjustifiable and deadly attack of the deceased even though the deceased was wholly unarmed, and the Defendant was in no danger from the deceased except such as might be inflicted by the deceased with his hands or feet.
Id. at 591. Justice Sullivan for the Court found this instruction to be improperly written because it was almost peremptory. Id. at 593. Yet the Court also found that the trial judge should have reformed it because the disparity in size was the defense theory of the case. Id.
¶ 25. To determine Manuel's similarity to our case, it is important to know whether the rejected instruction in Manuel prevented the jury from considering self-defense at all. Nothing in the Manuelopinion reveals whether any more general self-defense instruction was given. The record on file with the supreme court indicates that a valid self-defense instruction was given. Thus Manuel and the present appeal both address whether a disparate-size instruction must be granted to complement a correct self-defense instruction. The two cases differ in one important respect: in Manuel a flawed instruction on the issue was offered; no instruction was offered here at all. Consequently, we are not dealing with the admitted duty to reform a faulty instruction that presents the central defense, but instead with an argued duty to transform an unrelated instruction that presents a baseless defense.
¶ 26. What Manuel holds a defendant is entitled to receive is problematic. Must an instruction be given on every specific factual issue of the reasonableness of the self-defense? For example, if there was not a meaningful size disparity but the accused was older and arguably slower and weaker than the victim, must that be an instruction? If a disparity in the skill in fighting or frequency of experiences in fistfights becomes the question, is it reversible error not to give that instruction? Each tends to be a comment on a specific item of evidence. That is prohibited generally, and Manuel admits that the instruction must avoid it. Id. at 592. Regardless of such questions, I find that Manuel at least requires that an instruction raising the defendant's specific perspective on self-defense must be offered. The last statement that the Manuel court made on the issue defines it well: "The failure of the trial judge to cure the defective instruction was reversible error." Id. at 593.
¶ 27. Manuel may create its share of problems, but imposing a duty on a trial *704 judge to suggest the need or even order the defense counsel to prepare a disparatesize instruction is not one of them.
¶ 28. What is argued was sufficient in this case to require the instruction was an instruction regarding the right to stand one's ground and not retreat. If Reynolds' right to refuse to retreat had been her central defense raised by the evidence, then the trial court would have had a duty under Manuel to reform the instruction. That duty never arose. I do not find that this instruction can be the vehicle to reverse as to a separate instruction issue not thought of below.
¶ 29. This threshold requirement of offering a flawed instruction on the right subject is set out in Manuel. It is not some hypertechnical obligation created to trap the unwary. Within broad limits it is counsel that decides how to present evidence and how to have that evidence highlighted in instructions. Manuel requires that the trial judge go beyond rejecting an erroneously drafted instruction only if that is the one that raises the central defense question for the jury to answer.
¶ 30. I find nothing misleading or inadequate about the more abstract instruction on self-defense that was given. It was the perfect basis for jury argument on the reasonableness of the defendant's actions against the deceased. The defendant had everything that she needed for a fair trial of her claim of self-defense. The jury nonetheless rejected the claim. I would affirm.
McMILLIN, C.J., and LEE and MOORE, JJ., join this separate opinion.