964 So.2d 1218 (2007)
John W. BOOZE a/k/a John Booze, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01004-COA.
Court of Appeals of Mississippi.
September 18, 2007.
*1219 Imhotep Alkebu-Lan, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. A jury sitting before the Madison County Circuit Court found John Booze guilty of aggravated assault. The circuit court sentenced Booze to twenty years with fifteen years to serve and five years of post-release supervision. Aggrieved, Booze appeals and claims: (1) the circuit court erred when it amended the indictment after the jury was empaneled, (2) the trial court erred when it denied a lesser-included instruction on simple assault, (3) the evidence was insufficient as a matter of law to convict on aggravated assault, and (4) the conviction was against the weight of evidence. We find that the circuit court erred when it declined to instruct the jury on the lesser-included offense of simple assault. As such, we reverse and remand this matter for a new trial.

FACTS
¶ 2. On July 15, 2005, John Booze and his girlfriend, Santanya Riley, walked to the Community Store in Canton, Mississippi. By chance, they encountered Joe Luckett. Riley and Luckett were once involved in a relationship. As will be shown, recollections varied at trial, but there is no doubt that Booze and Luckett got into a fight. At some point, Riley injected herself into the fray and struck Luckett in the head with several beer bottles.
¶ 3. The Madison County Grand Jury returned an indictment against Booze and charged him with aggravated assault in violation of Mississippi Code Annotated Section 97-3-7(2). Booze pled not guilty and proceeded to trial on March 30, 2006.
¶ 4. The prosecution called four people who testified as to their recollection of the altercation. According to Luckett, Booze walked up to him and, without provocation, spontaneously punched him in the face. Luckett testified that, shortly after the fight ensued, Riley hit him in the head with a beer bottle. When Reverend William Thornton tried to break up the fight, Riley hit Luckett with a second bottle. Luckett testified that Booze slammed him to the ground, held him in place, and instructed Riley to kill Luckett while she continuously hit him with beer bottles. Lastly, Luckett stated that Booze held him down, grabbed a broken bottle, and tried to stab him in the face.
*1220 ¶ 5. Reverend Thornton, the owner of the store, testified that Luckett purchased beer and left. A few minutes later, he heard some commotion and argument outside the store. When he went outside, he saw Booze and Luckett arguing and "bulldogging." He tried to break up the fight, but Booze and Luckett pushed him aside. When Booze and Luckett appeared to be cooling down, Riley came from behind him and struck Luckett with a beer bottle. However, on cross-examination, Reverend Thornton testified that, at one point, Luckett had Booze in a headlock and, at that moment, Riley hit Luckett with the bottle.
¶ 6. After Riley struck Luckett with a bottle, Reverend Thornton went back inside his store and called the police. As for whether Booze told Riley to hit Luckett with a bottle, Reverend Thornton testified that he never heard Booze call for help or otherwise instruct Riley to hit Luckett. In Reverend Thornton's words, "[Booze] had too much heat on him. He couldn't say nothing."
¶ 7. Dante Luckett, the owner of a restaurant located next to Thornton's store, testified that he was less than fifteen feet from the altercation. According to Dante, he saw Luckett and Booze fighting and "a girl came up and just hit this one fellow with a bottle twice." He stated that he saw most of the fight but did not see anyone fall to the ground. Additionally, he said he did not see Booze hold Luckett down. Likewise, he did not hear Booze say anything to Riley or otherwise ask her for help.
¶ 8. Cohisa Myers testified that she was inside Reverend Thornton's store when she heard a bottle break. She went outside to see what was happening. According to Myers, she saw Luckett and Booze fighting. At some point Luckett was on the ground "for a minute." By her recollection, Riley "came out of nowhere, and she was picking up bottles and hitting [Luckett] upside the head with it." However, she testified that she never heard Booze instruct Riley to hit Luckett. Additionally, she stated that Luckett and Booze continued fighting after Riley hit Luckett.
¶ 9. Booze took the stand and testified in his own defense. According to Booze, he and Riley were walking to the store when he stopped to talk to a relative. Riley continued on to the store. When he arrived at the store, he saw Luckett with his left hand around Riley's neck. Booze testified that Luckett choked Riley as he held a beer bottle in his right hand. Booze told Luckett to let Riley go. When Luckett refused to let go, Booze stated that he punched Luckett. In response, Luckett hit Booze with the bottle in his right hand. At that point, they grappled with one another and fell to the ground.
¶ 10. By Booze's description, he and Luckett traded punches and, out of nowhere, Riley intervened on her own and hit Luckett with a bottle. However, even after Riley intervened, he and Luckett continued to fight and throw punches. According to Booze, he never used a weapon and he did not know Riley was going to attack Luckett with a beer bottle. Booze further testified that he did not encourage Riley to hit Luckett with a beer bottle. Specifically, during direct examination, Booze testified as follows:
Q: What if any instruction did you give Santanya Riley before she struck Joe Luckett with the beer bottle?
A. None at all, sir. I had no idea she was fixing to do what she did. I didn't give her none. I was too busy tying [sic] to defend myself.
Q. What if anything did you see her do before she struck Joe Luckett with the beer bottle?
A. Nothing.

*1221 Q. Did you see her?
A. I really didn't see her, period, because I was too busy. His cousin was there. I thought both of them was really going to jump on me. So I was too busy trying to watch both of them. I had really practically have forgotten that she was even there.
. . . .
Q. What if anything did you do during this time period to restrain or hold Joe Luckett so that Santanya Riley could strike him with the beer bottles?
A. Really, I couldn't hold him, `cause he was getting out on me, you know. He was whipping me, to tell the truth.
¶ 11. As mentioned, the jury found Booze guilty of aggravated assault. Following unsuccessful post-trial motions for JNOV or, alternatively, for a new trial, Booze appeals.

ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED WHEN IT DECLINED TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF SIMPLE ASSAULT.
¶ 12. Booze submitted a simple assault instruction and claimed he was entitled to the lesser-included offense instruction. The circuit court declined to instruct the jury that it could convict Booze for simple assault. Booze argues that by not including the lesser charge of simple assault in the jury instructions, the trial court committed reversible error. This argument is based on the assumption that Booze did not introduce a deadly weapon into the confrontation, and was not an accessory; therefore, the trial court should have given a jury instruction on the lesser-included offense of simple assault. The State contends that the trial court was correct to deny the simple assault instruction because the evidence could not support a reasonable juror finding Booze guilty of the lesser offense. We disagree. As such, we reverse and remand for a new trial.
¶ 13. A trial court should refuse a proposed lesser-included instruction when the evidence presented "could only justify a conviction of the principal charge." Jones v. State, 798 So.2d 1241(¶ 38) (Miss.2001). That is, a trial court should not grant a lesser-included offense instruction if "no reasonable jury could find the defendant guilty of the lesser-include-offense, and ultimately not guilty of at least one element of the principal charge." Odom v. State, 767 So.2d 242(¶ 11) (Miss.Ct.App.2000).
¶ 14. In considering whether a proposed jury instruction is supported by the evidence presented, "we must consider all of the evidence in the light most favorable to the party requesting the instruction. . . . That party must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence." Jones, 798 So.2d at (¶ 420). A trial court considering a proposed instruction "should err on the side of inclusion rather than exclusion." Id. at (¶ 38). Finally, proposed instructions should be given so long as they are not repetitious, are correct statements of the law, and are supported by the evidence. Id.
¶ 15. In order to prove the crime of simple assault the State is required to show the defendant "attempt[ed] to cause or purposely, knowingly or recklessly cause[d] bodily injury to another." Miss. Code Ann. § 97-3-7(1)(a) (Rev.2006). In contrast, to prove aggravated assault the State must show the defendant "attempt[ed] *1222 to cause or purposely or knowingly cause[d] bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss.Code Ann. § 97-3-7(2)(b). Viewing the testimony in a light most favorable to Booze, and drawing all reasonable inferences in favor of Booze, it is clear that, given the option, reasonable jurors could find Booze guilty of simple assault and not guilty of aggravated assault.
¶ 16. The amended indictment that charged Booze read, in pertinent part, as follows:
JOHN W. BOOZE . . . on or about the 15th day of July, 2005, in the county aforesaid and within the jurisdiction of this court, did purposely, knowingly and feloniously cause or attempt to cause bodily injury to Joe M. Luckett, by holding Joe M. Luckett down while another person hit Joe M. Luckett with five unopened beer bottles, in Madison County, Mississippi, in violation of Mississippi Code Annotated § 97-3-7(2), (1972), as amended, against the peace and dignity of the State of Mississippi.
By removing the word "serious" from the indictment the State proceeded to trial on the sole theory that Booze was guilty of aggravated assault by the fact that he aided and assisted Riley in her commission of an aggravated assault. Stated differently, the State's only theory of Booze's guilt was that Booze was an accomplice to Riley's aggravated assault. This theory of guilt is burdened by the necessity to prove two factors. First, the State must have shown, and the jury must have determined, that the bottles used by Riley were "deadly weapons." Secondly, the State must have proven, to the satisfaction of the jury, that Booze was an accomplice of Riley.
¶ 17. That the indictment did not allege a simple assault is of no moment. A jury may convict a defendant of an "inferior offense . . . necessarily included within the more serious offense" charged in the indictment. Odom v. State, 767 So.2d 242(¶ 11) (Miss.Ct.App.2000). Simple assault is such an "inferior offense" to the crime of aggravated assault. Id. at (¶ 13). If the jury decided against the State on either of the factors above the jury could have reasonably found Booze guilty of simple assault for two logical reasons. First, Booze admitted during his testimony that he started the fight by punching Luckett in the face. Since this punch did not cause serious bodily injury, this alone would be sufficient to sustain a charge of simple assault. Secondly, if the jury determined that Booze did act as an accomplice with Riley, but found the bottles used not to be deadly weapons, Booze could have been found guilty of simple assault under the theory of accomplice liability. Stated differently, if the jury concluded that Riley had committed a simple assault on Luckett because the beer bottles were not "deadly weapons," but that Booze aided, encouraged, or assisted Riley in that simple assault, then Booze was likewise guilty of simple assault. Anyone who aids, incites, participates, or abets another to commit a crime is guilty as a principal. Collins v. City of Hazlehurst, 709 So.2d 408(¶ 25) (Miss.1997).
¶ 18. Jackson v. State, 594 So.2d 20, 24 (Miss.1992) seems to support a contention that even if the jury found Booze did not introduce the bottle into the fight, they could still find him guilty of aggravated assault as even bare hands may constitute a deadly weapon if the jury determines them to be a "means likely to produce serious bodily injury." While it is certainly true that an attack with bare hands and closed fists is sufficient to sustain a charge for aggravated assault, such an issue is a matter for a jury to decide *1223 and is "to be resolved according to the circumstances of each case." Jackson, 594 So.2d at 23; see also Reynolds v. State, 776 So.2d 698, 700 (Miss.Ct.App. 2000) (holding that whether the use of a telephone could constitute a deadly weapon if used with means or force likely to produce death involves a question of fact to be decided by the jury in light of the evidence); Pulliam v. State, 298 So.2d 711, 713 (Miss.1974). More importantly, Booze was not charged with aggravated assault in causing bodily injury with a "deadly weapon," i.e., his fists.
¶ 19. One could contend that Booze's alleged act of attempting to stab Luckett with a broken beer bottle removed his actions from that of a simple assault to aggravated assault. However, this view of the evidence is not in a light most favorable to Booze. While Luckett did testify that Booze tried to stab him, no other witness corroborated this version of events. Booze testified that he did not have a weapon at any time during the altercation. Additionally, no other witness, other than the victim Luckett, testified that he or she saw Booze use a weapon of any kind. More importantly, Booze was not charged with aggravated assault by cutting Luckett with a broken beer bottle.
¶ 20. Finally, one could argue that even if the jury were to determine that Booze's pugilistic attack alone did not constitute the use of a deadly weapon likely to produce serious bodily harm and, further, did not believe Luckett's testimony that Booze attempted to stab him, the jury could still find him guilty of aggravated assault as an accomplice with Riley in her attack of Luckett.
To be convicted as an accessory the defendant must possess the mens rea for the commission of the crime. The precise state of mind of the defendant has great significance in determining the degree of his guilt. An accomplice may be convicted of accomplice liability only for those crimes as to which he personally has the requisite mental state.
Welch v. State, 566 So.2d 680, 684 (Miss. 1990). True enough, Luckett claimed that Booze instructed Riley to kill him. However, Booze denied this and other witnesses present testified that Booze made no such request. While it is the jury who decides upon the credibility of witnesses, when reviewing whether a lesser-included offense instruction should have been given, this Court must view all evidence in a light most favorable to the defendant.
¶ 21. As to whether Booze's accomplice status and the necessary accompanying intent is evident from the fact that Riley intervened in the fight while Booze fought Luckett, all eyewitness testimony except Luckett's indicated that Booze had no knowledge of Riley's intent to assault Luckett with the bottles. Accordingly, viewing the evidence in a light most favorable to Booze, the only point in time that raises an inference of Booze's intent to sustain a charge of aggravated assault as an accomplice to Riley, is when Booze continued to fight Luckett after Riley's initial attack. However, an equally reasonable interpretation of the facts is that Booze had no choice but to continue fighting. Booze stated that Luckett continued to press his attack after being hit by Riley.
¶ 22. Myers corroborated this when she testified that, after Luckett was struck by the bottle, he and Booze kept fighting. In a situation such as this, where Booze started the fight with Luckett with no intention to use a beer bottle as a weapon, and Riley interjected herself in the altercation without request from Booze, it is not unreasonable for a jury to conclude that the intent required to sustain a charge of aggravated assault was not shown by the fact that *1224 Booze continued to fight. Accordingly, the circuit court erred when it did not grant the lesser-included offense instruction. As such, we reverse and remand this matter for a new trial.
¶ 23. Booze raised three other issues. However, based on our resolution of this issue, Booze's other issues become moot. Consequently, there is no need to address them.
¶ 24. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.