# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00880-COA

JUSTIN HAGAN A/K/A JUSTIN BROOKS HAGAN          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

DATE OF JUDGMENT:      07/14/2023
TRIAL JUDGE:      HON. CALEB ELIAS MAY
COURT FROM WHICH APPEALED:      NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
     BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
     BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:      STEVEN SIMEON KILGORE
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:      AFFIRMED - 02/04/2025
MOTION FOR REHEARING FILED:

### BEFORE BARNES, C.J., McDONALD AND EMFINGER, JJ.

### BARNES, C.J., FOR THE COURT:

¶1. A Neshoba County jury convicted Justin Hagan of aggravated assault for shooting his neighbor, who was also his first cousin, with a shotgun loaded with birdshot. The trial court sentenced him to fifteen years in the custody of the Mississippi Department of Corrections, with five years suspended and ten years to serve, followed by five years of supervised probation. Hagan appeals his conviction and sentence, arguing the trial court erred in refusing his lesser-included-offense jury instruction on simple assault. Finding no error, we affirm.

### STATEMENT OF FACTS

¶2.    Hagan and the victim, Tyler Hancock, are first cousins and lived on adjoining rural property near Union, Mississippi. Hancock explained that he and Hagan "parted ways" about six months before the shooting over payment for some carpentry work Hagan had done for Hancock, which had resulted in a fistfight between the two. Since then, the cousins had not spoken.

¶3.    In May 2022, Hancock was riding his tractor to bush-hog some of his property near the boundary with Hagan's property when Hancock heard what he described as several "warning shots" coming from Hagan's property. Hancock testified that in the recent past, he had heard shots "going over [his] head" many times coming from Hagan's property. Hancock decided to ignore the warning shots and continued bush-hogging because he "was on [h]is own property not doing anything wrong [and] didn't want to live [his] life in fear." On his third pass of the area, Hancock heard gunfire and felt stinging and blood running down his face. Realizing he was shot, Hancock rode his tractor back to his house, and his wife called law enforcement. An ambulance took Hancock to a hospital in Meridian, Mississippi, where physicians removed four birdshot pellets—two in his shoulder and two in his chest. A fifth pellet remained lodged in his skull at the time of trial.

¶4.    Deputy Gerald Willis of the Neshoba County Sheriff's Department responded to the scene. Hancock informed Deputy Willis that Hagan had shot him, and the deputy saw blood on Hancock's face and right side. Deputy Willis then drove to Hagan's home and detained him. Deputy Willis testified that Hagan told him the gun used to shoot Hancock was in his truck. With Hagan's consent, Deputy Willis searched the truck and found a 12-gauge

2

shotgun, as well as an AK-47 assault rifle and a revolver. Additionally, multiple spent shell casings were in the bed of Hagan's truck. Deputy Willis also recovered one brass casing, one spent shotgun shell, one spent assault-rifle shell, and an unspent shotgun shell near the cousins' property line thirty-five to forty yards from where Hancock was shot on his tractor. Deputy Willis testified that birdshot from a shotgun at that distance could possibly, but not probably, cause permanent disfigurement or kill an individual.

¶5. Investigator Josh Jolly of the Neshoba County Sheriff's Department arrived on the scene and obtained a statement from Hagan. At the scene and after being transported to jail, Hagan told Investigator Jolly that he had hit Hancock when he was shooting at a blue jay in a tree. Later, however, during an interview, Hagan admitted to Investigator Jolly that he had shot at Hancock to scare him. Investigator Jolly testified Hagan told him that when Hancock continued to bush-hog, Hagan got mad and shot at Hancock again. Hagan explained that he was aggravated Hancock had not paid him for some work. Hagan told Jolly that he had used a 12-gauge shotgun with size 7.5 birdshot, shooting over Hancock's head from about thirty-five to forty yards away. When Investigator Jolly was asked at trial where he would aim if he wanted to shoot someone from forty yards away with birdshot, Jolly responded that he would aim above the head because "the bullets are going to drop." At trial, Investigator Jolly testified that it was reasonable to believe a shotgun loaded with birdshot could kill someone and is "[w]ithout [a] doubt . . . a deadly weapon." He also believed "without a doubt" that Hagan intended to kill or seriously injure Hancock.

¶6. Hancock's wife, Michelle, testified that on the day of the shooting, she heard a

3

shotgun go off and saw Hancock returning to the house on his tractor. He had blood running down his face and chest; so she knew he had been shot. Michelle testified that she blamed Hagan because this was "not his first time shooting a gun in our direction"; she had seen Hagan fire shots at her family before. Over the defense's objection, Michelle testified that the night before the incident, she saw her daughters driving up their driveway fast and heard gunshots. When she walked outside, she saw Hagan's vehicle parked at the end of the driveway.

¶7. Michelle's daughter, Madison, testified about this incident as well. She was returning home from town with her sister that evening when they saw Hagan's truck on the road; so they decided to take a different way home. Hagan followed them. When Madison pulled into their driveway, she heard gunshots but never actually saw Hagan because it was dark. Madison testified she and her sister were scared for their safety "[b]ecause this [wa]sn't the first incident where [Hagan] shot guns off and just caused harm." Hagan confessed to Deputy Willis and Investigator Jolly about this shooting. However, Hagan told Jolly during his interview that he was not necessarily shooting at Madison's vehicle; "he was just shooting to scare whoever was coming by his house."

**ANALYSIS**

¶8. Hagan's sole issue on appeal is that the trial court erred in refusing to give his lesser-included-offense instruction (D-9) for simple assault. Hagan explains that his defense at trial was the shotgun was not used as a deadly weapon because it was loaded with birdshot, and the evidence showed he did not intend to injure Hancock because Hagan aimed over

4

Hancock's head from a distance. Hagan argues that in refusing his lesser-included-offense instruction on simple assault, the trial court denied him of his right to present the jury with his theory of the case. Accordingly, Hagan requests this Court reverse his conviction and sentence and remand his case for a new trial.

¶9.     An appellate court reviews the "trial court's . . . denial of a request for a lesser offense jury instruction de novo." *Haymon v. State*, 346 So. 3d 875, 884 (¶27) (Miss. 2022) (citing *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013)). "To warrant the lesser-included offense instruction, a defendant must point to some evidence in the record from which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Id.* (quoting *Goodnite v. State*, 799 So. 2d 64, 69 (¶24) (Miss. 2001)). "A defendant has an 'absolute right' to a jury instruction for a lesser-included offense *if* the evidence supports such an instruction." *Brown v. State*, 285 So. 3d 671, 676 (¶12) (Miss. Ct. App. 2019) (emphasis added) (quoting *Downs v. State*, 962 So. 2d 1255, 1260 (¶22) (Miss. 2007)). However, "if the evidence can only support the principal charge, then the lesser-included offense should be refused." *Id.* (citing *Taylor v. State*, 577 So. 2d 381, 383 (¶11) (Miss. 1991)). In determining whether a proposed jury instruction is supported by the evidence, the trial court must give the party requesting the instruction "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Buchanan v. State*, 84 So. 3d 812, 815 (¶8) (Miss. Ct. App. 2011) (quoting *Booze v. State*, 964 So. 2d 1218, 1221 (¶14) (Miss. 2007)).

¶10.     Hagan's indictment charged him with aggravated assault by a deadly weapon under

Mississippi Code Annotated section 97-3-7(2)(a)(ii) (Rev. 2020), alleging he "did willfully, unlawfully, feloniously, purposely and knowingly attempt to cause bodily injury to Tyler Hancock, with a deadly weapon, to-wit: a firearm, by shooting at . . . Hancock with said firearm, said firearm being means likely to produce death or serious bodily harm. . . ." During trial, Hagan proposed a lesser-included-offense instruction (D-9), tracking the simple assault statute, section 97-3-7(1)(a)(i)-(ii): the jury could find Hagan guilty of simple assault if the evidence showed he: "1) purposely, knowingly or recklessly causes bodily injury to another; or 2) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm."

¶11.   At the jury instruction conference, the State argued that a simple assault instruction should not be given because under the indicted offense, the State had to prove that Hagan caused bodily injury with a deadly weapon; the only argument for a simple assault instruction would be if there was evidence the shooting was a negligent act, and there was none.  The defense countered that the State was assuming the shotgun would be considered a deadly weapon, and if it were not, a lesser-included-offense instruction for simple assault would be proper under the first subsection for simple assault for "purposely, knowingly or recklessly caus[ing] bodily injury to another."  The trial court refused instruction D-9 based upon *Hunt v. State*, 569 So. 2d 1200 (Miss. 1990).[1]  Hunt was indicted for aggravated assault after shooting and wounding the victim with a shotgun in a store.  *Id.* at 1201.  While

---

[1]  Hagan also submitted a jury instruction (D-2), which the trial court refused for the same reason as D-9, defining simple assault by tracking all three subsections of section 97-3-7(1)(a)(i)-(iii).  However, Hagan does not claim error with the trial court's denial.

the *Hunt* court reversed the conviction on another issue, the court found no error in the trial court's refusal of a jury instruction on simple assault because "[t]he use of [a] shotgun, a deadly weapon, precluded [the defendant's] entitlement to any simple assault instruction." *Id.* at 1203.

¶12.    Hagan now argues that a shotgun is not always a deadly weapon and maintains it is a question of fact for the jury to determine, citing *Hutchinson v. State*, 594 So. 2d 17 (Miss. 1992), and *Buchanan*.  In *Hutchinson*, the supreme court found the trial court properly denied a lesser-included offense jury instruction on simple assault when the defendant swung a fillet knife at the victim but inflicted only a minor injury.  *Hutchinson*, 594 So. 2d at 17-18.  The supreme court explained that in aggravated assault cases, under the "discrete facts presented," the accused may have the jury consider simple assault but not in every case; it depends on whether there was an evidentiary basis for the lesser-included-offense instruction.  *Id.* at 18.

¶13.    In *Buchanan*, this Court affirmed the defendant's conviction for misdemeanor simple assault when the defendant was indicted for aggravated assault on a peace officer.  *Buchanan*, 84 So. 3d at 813 (¶1).  The defendant swung a baseball bat at officers but never hit anyone.  *Id.* at 813-14 (¶4).  On appeal, the defendant claimed the trial court erred in giving the lesser-included-offense instructions of simple assault and misdemeanor simple assault because the evidence did not warrant it, citing *Hutchinson*.  *Id.* at 817 (¶13).  This Court found the simple assault instructions were proper because a baseball bat was not always considered a deadly weapon—whether an instrument used in an assault was a deadly

7

weapon is a question of fact for the jury to determine. *Id.* at 818 (¶15).

¶14. Hagan argues under his case's "discrete facts," as stated in *Hutchinson*, a simple assault instruction was warranted. While Hagan admitted to shooting Hancock with a shotgun, he points to the facts: the weapon was loaded with size 7.5 birdshot, fired thirty-five to forty yards away, and aimed over Hancock's head, all supposedly lessening the shotgun's deadliness. Thus, under the circumstances, Hagan claims a reasonable juror could find the shotgun was not a deadly weapon. Additionally, Hagan argues that like the baseball bat in *Buchanan*, whether the shotgun was a deadly weapon was a question of fact for the jury. We disagree. Neither of these cases involved a firearm and cannot limit *Hunt*'s holding.

¶15. For a lesser-included-offense instruction to be given, there must be sufficient evidence for a reasonable jury to convict on the lesser-included charge. *Haymon*, 346 So. 3d at 884 (¶27). Here, there was not. Hagan was indicted for aggravated assault by a deadly weapon; thus, the State had to prove that Hagan attempted or did cause bodily injury to the victim with a deadly weapon. *See* Miss. Code Ann. § 97-3-7(2)(a)(ii). Hagan's simple assault instruction D-9 contained language from both subsection (i) and (ii) of 97-3-7(1)(a), requiring the State to prove Hagan "purposely, knowingly or recklessly cause[d] bodily injury to another" or "negligently cause[d] bodily injury with a deadly weapon . . . ." However, under subsection (ii), there was no evidence Hagan's shooting was negligent. Hagan admitted to Investigator Jolly that he aimed over Hancock's head and pulled the trigger. Jolly testified that he believed Hagan intended to shoot Hancock because birdshot

8

was fired over the head of the target from forty yards away and would fall.

¶16.    Hagan's defense was that the shotgun, by the manner in which it was used, was not a deadly weapon. Counsel also made this argument at the jury instruction conference, trying to evade the "negligence" element under the deadly-weapon subsection (ii) and, instead, apply subsection (i). In *Hunt*, 569 So. 2d at 1203, the supreme court held that use of a shotgun precluded a simple assault instruction. Even if *Hunt* could be limited by evidence of how the shotgun was used, the defense presented no evidence that the distance or type of shot made the gun less deadly. There was no evidence to counter Investigator Jolly's testimony that it was reasonable to believe a shotgun, loaded with birdshot, could kill or seriously injure someone.

¶17.    Because simple assault had to be proved under subsection (ii) with a deadly weapon, and there was no evidence Hagan acted negligently, the evidence could not support a conviction for simple assault. Therefore, the trial court properly refused Hagan's lesser-included instruction (D-9) for simple assault. Accordingly, we affirm Hagan's conviction and sentence for aggravated assault.

¶18.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**